JOHN H. WILLIAMS

*v.*

CITY OF KNOXVILLE.

416 S.W.2d 758.

(*Knoxville,* September Term, 1966.)

Opinion filed June 6, 1967.

FRANK L. FLYNN, JR., Knoxville, for appellant.

ROBERT CROSSLEY, Knoxville, for appellee.

Mr. Chief Justice Burnett delivered the opinion of the Court.

The appellant, John H. Williams, filed a bill in the Chancery Court seeking to recover from the City of Knoxville the sum of $1,992.78, which he alleges was deducted from his salary as a City Police Officer for the City of Knoxville from the time he became employed in December, 1955, until his voluntary resignation from the City Police Department on October 7, 1965.

In his bill appellant quoted Sections 120 and 127 of the City Charter. Section 120 is, as follows:

"There shall be created by the legislative body of the City of Knoxville a fund to be known as 'The Firemen and Policemen Pension Fund.' All members of the two uniformed departments known as the fire and police departments, and all firemen and policemen who are members of said uniformed departments and who may be detailed to special duty from out of said departments of said city, who desire to take advantage of the pension benefits contained in this act, shall, on their first city payday after said fund is created, and

all said members on every following said payday thereafter, pay into the office of the director of finance of said city five per cent (5%) of their monthly salary, so long as they are members of said departments, which amount may be deducted from the salaries each payday and be credited to 'The Fireman and Policemen Fund' by the director of finance. Any member of the fire department or police department who shall fail to agree to said deduction for said purpose shall not be entitled to receive a pension, or any other sum provided for by this act.''

Section 127 of the Charter provides, as follows:

''Any member of the fire and police departments of the City of Knoxville who shall resign or be discharged from the service of either of said departments of said city, shall relinquish all right or claim to the firemen and policemen pension fund.''

To the bill, wherein the above was alleged and the sum above mentioned was sought, the City demurred on the ground that the provisions of the Charter of the City of Knoxville, as quoted in the original bill, show upon their face that the appellant voluntarily relinquished all right to a claim against the City by his resignation. This demurrer was sustained and the present appeal followed.

It is the theory of the appellant, very ably made in his brief, that, since participation in the Pension Fund was not mandatory when he elected to participate in said fund, he entered into a contractual relationship with the City of Knoxville, the terms of which consisted of Sections 119 through 128 of the City Charter, two of these Sections are quoted above. Thus it is, he contends that where a public employee voluntarily participates in a

statutory pension system, such as the one in Knoxville, and contributes on a voluntary basis, then when he voluntarily quits his place and the relationship between the parties is no longer in existence he is entitled to the return of the sum he has voluntarily paid into this pension fund.

██ Appellant further insists that Section 127 of the City Charter is in the nature of a forfeiture statute which should be construed strictly against the City. Counsel very aptly and correctly details the fact that it is a general principle of constitutional construction of statutes that any provisions which relate to forfeitures must be strictly construed against the person enacting the statute and in favor of the one who is made to comply with it. In other words, it is his theory under this provision that to get the benefits of the pension system he voluntarily consented to allow five per cent of his salary to be taken out each payday, but in doing so he was forced to agree to the provisions of Section 127 of the Charter, above quoted, to the effect that if he voluntarily quit he would relinquish all his rights to any sums which he had paid in.

Of course, it has long been the law of this State and in all other jurisdictions, as far as we know, that forfeitures are not favored and when a statute does provide for a forfeiture such statutes are to be strictly construed. These principles are well stated by authorities cited in appellant's brief such as *May Co. v. Anderson*, 156 Tenn. 216, 300 S.W. 12; 37 C.J.S. Forfeitures sec. 4, subsec. b, p. 8; 23 Am.Jur., p. 601, sec. 5, and other authorities which well support this argument.

Counsel for the appellant is frank enough to quote from McQuillen on Municipal Corporations, 3rd Ed., Vol. 3, Sec. 12.146, at pages 619, 620, and 621, as follows:

"Contributions made by an employee to a pension fund are not the property of the contributor or of his estate, and, as a general rule, are not recoverable either by the employee, or by his dependents, especially where the contributor has been discharged for cause. Some courts, however, permit a recovery of contributions made by an employee, and provision therefor may be made by statute or other governing law, provided the law operates prospectively. It is apparent that recovery may be had of deductions which were made from an employee's salary without authority, and recovery has been allowed where the contributor, without fault on his part, was denied participation in the pension fund. Accumulative leave has been held not subject to payroll deductions for the benefit of a pension system."

In arriving at our conclusion, after reading this record and considering the matter, we have read a number of cases on the subject as cited in McQuillen, supra, and others.

▪ ■ This record shows by reading various Sections of the City Charter in reference to the Pension Fund of these uniformed departments that when a policeman, Mr. Williams in this case, enters into a voluntary agreement to participate in this Pension Fund he plainly relinquished "all right to claim" to the fund in the event that he voluntarily quit the department. Under the different Charter provisions such as may be found in Sections 121, 123 and 124, it is noticed that by his election to participate in this fund he became entitled not only to a retirement pension, if he satisfied the conditions precedent, but, in addition, during all the time he was working as a policeman for the City of Knoxville participating in this fund, he and his family had the protection of the

provisions of the Pension Fund in the event of his disability through injury received in the line of duty, and in certain instances for disability resulting from disease or otherwise than through an injury received in the line of duty, and likewise there was a provision for a pension to his dependents in the event that he died or was killed.

So it is, we see that naturally any thoughtful person entering into employment of the City of Knoxville in one of these uniformed departments would enter into this Pension Fund for the vary obvious benefits he was getting all the time he was working if any of these things should happen to him, and, of course, what he paid into this Pension Fund would be a small part of what could have been, or might have been, the obligation of the City provided he was injured in the line of duty and sickness or death accrued. Thus it is that during the period Mr. Williams worked for the City he was getting many benefits even though they didn't accrue to him in actual dollars and cents. The mere fact that he had them there where they would accrue provided he was entitled to it amounts to the same benefits as if he had taken out an insurance policy and paid premiums for these various and sundry benefits.

A case very much in point and very similar in many details especially in the conclusion to be drawn from the legal requirements under such a factual situation is that of *Goodwin v. Board of Trustees, of Firemen's Relief and Pension Fund of City of Oakland et al.,* as found in 72 Cal.App.2d 445, 164 P.2d 512. Many of the arguments are made in that case as are made in the present case. Many of the statutory provisions in reference to the pension are the same in that case, or have the same result, as in the present case. The court there said this:

"As long as there was no provision in the charter for a refund of these funds in the event of voluntary resignation before reaching retirement age, it must be held that under the type of plan here involved the deductions were in the nature of premiums for the types of protection above outlined. This being so there was no legal or equitable, express or implied, obligation until May 4, 1943, on the part of the city to refund these sums if the employee voluntarily resigned. No other conclusion is permissible. The moneys paid into the fund were not trust funds belonging to the firemen, but public moneys of the city. It should be here noted that the five per cent deduction made from a fireman's salary was obviously insufficient alone to support the pension plan. Under the plan a fireman could retire at 55 after twenty years of service. During that period he would pay in the fund the equivalent of one year's salary. This would pay him half salary for but two years. Obviously, at 55, his life expectancy is much longer. Thus it is clear that, as accident insurance plus the possibility of a future annuity, firemen received a quid pro quo for their deductions."

We note two New York cases to the same effect, that of *Richards v. City of Geneva*, as reported in 161 Misc. 572, 292 N.Y.S. 397, which merely reaches the conclusion that since the statute, under which the man therein joined this pension fund, and the local law do not provide that the amount deducted from the pay from a member of the police department shall be returned to him in case he resigns before he becomes entitled to a pension, that he is not entitled to get it back. The New York court in another case found in the same volume of N.Y.S. at page 771, the case of *Graven v. Scott*, 249 App.Div. 514,

reached the same conclusion. There are other cases to the same effect, but for the reasons heretofore set forth and particularly those pointed out in the California case we think unquestionably that the Chancellor is right in his conclusion herein under the prevailing Charter provisions under which the appellant entered this pension plan.

The Charter provision, hereinbefore quoted and applicable in this case, is not a forfeiture statute but, it seems to us, is a statute enacted for the benefit of city employees to provide for their welfare and retirement. It is necessary to have such statutes for the good and welfare of the people spending their life in the service of the city. There are a number of cases, of course, involving the question here involved which come up especially in cases where the estate of the deceased employee claims certain rights to this pension fund. Of course, such cases depend upon the facts of each case and unless it is provided in the statute or charter, which creates this pension fund, that upon the employees' decease their dependents are entitled to the funds back, the courts generally apply the same reasoning as that applied to a man voluntarily resigning—that he is not entitled to a return of the fund.

After carefully considering the matter we are satisfied that the Chancellor has reached the right conclusion, and his judgment is thus affirmed.