**FIRST TENNESSEE BANK NATIONAL ASSOCIATION, Appellant,**

v.

**Bill JONES, Commissioner, Tennessee Department of Safety, Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

March 4, 1987.

Permission to Appeal Denied by Supreme Court May 18, 1987.

John F. Dugger and Thomas R. Frierson, II, Morristown, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Myra L. Sanderson, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

CANTRELL, Judge.

This case involves the forfeiture of a 1980 Mercedes 450 automobile to the State under the following provisions of Tenn. Code Ann. § 55-5-108(b)(hereafter referred to as § 55-5-108):

(b) As used in this subsection, unless the context otherwise requires, "property" means any vehicle, aircraft, boat or other vessel, special mobile equipment, boat trailer, mobile self-propelled construction, farm or forestry machinery, similar equipment, or any component part thereof.

(1) Any property on which the manufacturer's serial number, engine number, transmission number, vehicle identification number, or other distinguishing number or identification mark has been removed, defaced, covered, altered, destroyed or otherwise rendered unidentifiable is hereby declared to be contraband and subject to forfeiture to the state. This subdivision shall apply to all persons....

The appellant, First Tennessee Bank, is first lienholder on the automobile. As a claimant to the automobile, the appellant received a hearing on the forfeiture as required by § 55-5-108(b)(4). The initial hearing was before a Department of Safety hearing officer, who ordered the forfeiture of the automobile to the State. That deci-

sion was affirmed by the Commissioner of Safety and by the Chancery Court of Davidson County on appeal.

Judicial review of an administrative agency decision under the Uniform Administrative Procedures Act is confined to the record made before the agency, and at the appellate level, before the Chancery Court. Under Tenn.Code Ann. § 4–5–322(h), the reviewing court may reverse or modify an agency decision if it is unsupported by substantial and material evidence in the record.

The appellant first contends that the agency's decision to order the forfeiture of the automobile is not supported by substantial and material evidence in the record. In addition, he argues that since forfeiture statutes must be strictly construed, *Williams v. City of Knoxville,* 220 Tenn. 257, 416 S.W.2d 758 (1967), the State must not only prove that an identification number required by statute has been covered or changed in some way, but also that the vehicle is thereby rendered unidentifiable before the automobile is subject to forfeiture. This interpretation, however, is contrary to the plain wording of the statute. Section 55–5–108(b)(1) states, in relevant part:

> Any property on which the manufacturer's serial number, engine number, transmission number, vehicle identification number, or other distinguishing number or identification mark has been removed, defaced, covered, altered, destroyed or otherwise rendered unidentifiable is hereby declared to be contraband and subject to forfeiture to the state.

The inclusion of the words "or other distinguishing number or identification mark" clearly indicates that the Legislature did not intend this section to apply only to identification numbers required by statute, such as the engine number, transmission number and vehicle identification number. Instead, the Legislature first listed specifically the numbers required by statute to be on a vehicle or its component parts, then added the general phrase "or other distinguishing number or identification mark" to

explicitly include other numbers or marks not required by statute to be on the vehicle.

■ Furthermore, the plain wording of the statute is contrary to the appellant's contention that the State must prove that the vehicle has been rendered unidentifiable. The general phrase "or otherwise rendered unidentifiable" following the specific list "removed, defaced, covered, altered, destroyed" refers to the number or mark on the property in question. The statute does not require the State to prove that the vehicle is unidentifiable or stolen. The statute only requires the State to prove that an identification number or mark has been changed or rendered unidentifiable. Once the State has proved that, the property is contraband and the burden of proof shifts to the claimant to prove the original identification number and his right to the property under § 55–5–108(b)(5).

We must now determine whether there is substantial and material evidence in the record to support the agency's decision. The Supreme Court has interpreted "substantial and material evidence" to mean such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. *Southern Ry. Co. v. State Board of Equalization,* 682 S.W.2d 196 (Tenn.1984).

■ The hearing officer made written findings of fact, which were adopted in their entirety by the Commissioner. The hearing officer found that the PVIN plate bearing the vehicle identification number had been removed from the dash of the impounded vehicle and replaced with the PVIN plate from a vehicle that had been wrecked, burned, and declared a total loss by the owner's insurance company. This finding was supported by the testimony of the State investigator that the plate was loose and bent and the dash had faded, leaving an outline of a larger plate than the plate presently on the dash.

The investigator also testified that the information plate on the left side door striker post was attached with American pop rivets, whereas the Mercedes manufac-

turer attaches these plates with metric rivets. Based on that testimony, the hearing officer found that the information plate had been removed and put back on the door post.

Although the Mercedes manufacturer affixes a confidential vehicle identification number in two different places on the frame, the vehicle in question bore no confidential vehicle identification number, and the investigator could find no evidence that these numbers had been removed. The hearing officer thus concluded that the entire section of the frame where these numbers should have been was removed and replaced with different sections bearing no numbers.

The original owner of the vehicle bearing the vehicle identification number on the impounded automobile told the investigator that his vehicle was blue with a blue interior and that he was paid a total loss claim by his insurance company after his automobile was wrecked and burned. The engine number on the impounded vehicle matches the number on the engine originally installed in the blue Mercedes. However, the vehicle impounded is red with a beige interior, and was originally white, as evidenced by paint samples taken from the exterior. The investigator testified that he was unable to locate any other identification number or marks on the impounded vehicle. From this testimony we must infer that no number appeared on the transmission.

Based on the above findings of fact, we conclude that there is substantial and material evidence in the record to support the agency's decision to order forfeiture of the vehicle, with the exception of the engine. The evidence is clearly sufficient to conclude that the body of the vehicle, including the interior, is not the body to which the vehicle identification number was originally attached. The transmission apparently bore no number at all. The body and the transmission therefore are contraband under § 55–5–108(b)(1) and subject to forfeiture.

Although the appellant argues that parts of the frame could have come from other automobiles which could have been legally acquired, there is no proof to support that theory in the record. Even assuming the body and other parts were legally acquired, Tenn.Code Ann. § 55–5–112(a) makes it unlawful to "place or stamp any serial, engine, transmission, or other number or mark upon a motor vehicle or its component parts, except one (1) assigned thereto by the division." Subsection (b) then provides that the restoration by an owner of an original identification number shall be allowed under a permit issued by the division of motor vehicles. If the parts used to rebuild the wrecked Mercedes were legally acquired, the owner could have protected his interest by obtaining a permit. Even though the owner did not obtain a permit to restore the original identification number, § 55–5–108(b)(5) provides that any claimant can prevent forfeiture by establishing, by a preponderance of the evidence, the original identification number on the parts in question and his right, title or interest in that property. This the appellant apparently could not do. However, the statute clearly states that "if no claimant can establish in this manner his ownership of the property, the property *shall* be forfeited to the State." (Emphasis added.) The agency therefore correctly ordered the forfeiture of the transmission and the body, including the vehicle identification number plate. *See* Tenn.Code Ann. § 55–5–127.

With regard to the engine, however, the State has failed to show that the engine number was removed, defaced, covered, altered, destroyed or otherwise rendered unidentifiable. The hearing officer found that the engine number was the same as the number on the engine originally installed in the wrecked blue Mercedes. The investigator also testified that the current vehicle title reflected First Tennessee Bank as the lienholder on the vehicle, and the bank president testified that the debtor was in default on the promissory note.

The statute clearly contemplates separate treatment of parts with individual identification numbers, since it defines "property" as "any vehicle, aircraft, boat or other vessel, special mobile equipment,

boat trailer, mobile self-propelled construction, farm, or forestry machinery, similar equipment, or *any component part thereof.*" (Emphasis added.) Subsection (b)(1) authorizes the forfeiture of "property" only if the identification number has been changed in some way. Since the evidence that the engine number has not been changed is uncontradicted and the appellant has proved its interest in the vehicle and/or parts thereof not in violation of the statute, the appellant is entitled to re-claim the engine. Although the statute authorizes the Commissioner to require reimbursement by the claimant of all towing, preservation and storage charges before releasing the property, these charges for the engine would be included in and inseparable from the charges for the rest of the vehicle forfeited to the State. The Commissioner therefore should not tax these costs to the appellant in this case.

■ The appellant next contends that § 55–5–108(b) does not apply to vehicles to which the State has issued a certificate of title, or in the alternative, that the State should be estopped from ordering forfeiture of a vehicle to which a certificate of title has been issued. With regard to the first argument, we simply note that § 55–5–108(b) does not exempt vehicles to which the State has issued a certificate of title from its forfeiture provisions. If the Legislature had intended to exempt those vehicles, it could have done so with the inclusion of a phrase to that effect.

In its estoppel argument, the appellant quotes the following passage from *Bledsoe County v. McReynolds,* 703 S.W.2d 123 (Tenn.1985):

> It is significant to observe that in those Tennessee cases where estoppel was applied, or could have been applied, the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence.

■ In the paragraph following the above quotation, the appellant claims that it "relied upon the State's certificate of title in lending its money to Steve Anderson." On the preceding page, however, the appellant states that it loaned the money, took a security agreement, and applied for a certificate of title on June 11, 1984. The certificate of title was actually issued on June 16, 1984. Since the appellant loaned the money five days before the certificate of title was issued, the appellant could not have been clearly induced to act to its detriment by the affirmative action of the State.

■ However, assuming *arguendo* that the appellant did in fact rely on the certificate of title in loaning its money, we do not believe the estoppel doctrine can be invoked under the facts of this case. The appellant contends that its detrimental reliance was induced by the following language on the certificate of title:

> "After the exercise of reasonable diligence in ascertaining whether or not the statements made in the application are true, the applicant above named has been duly recorded in this Department as the owner of the motor vehicle described subject to the below liens, if any."

The above language neither expresses nor implies any warranty or guarantee that the certificate of title is absolute proof of ownership of the vehicle. Although the certificate of title statutes are designed primarily to prevent theft and facilitate the transfer of titles, the Legislature did not intend to make the State a title insurer, liable for any undisclosed facts which a reasonably diligent search of state records would not reveal.

In the case at bar, the search of state records revealed only an unbroken chain of title from the new car dealer to the record owner to whom the appellant loaned its money. The State could not have discovered that the record owner and his predecessor in title had failed to comply with Tenn. Code Ann. §§ 55–3–128 to 130, requiring any person dismantling a wrecked vehicle to return the certificate of title to the State and acquire a permit to dismantle the vehicle.

However, the appellant could have discovered that fact in this case. The President of the bank admitted that he saw the

vehicle the day the loan was made, but stated that he was unaware of any problem. Even a cursory inspection of the dash of the vehicle would have disclosed to any reasonably prudent lender that the vehicle identification number plate was not the one originally installed on the dash. Upon discovering that fact, a lender would be put on inquiry notice that a problem could exist. A prudent lender would demand an explanation and refuse to make a loan until a thorough investigation of the permit authorizing such changes could be conducted. If the lender chooses not to exercise that degree of caution before making a loan, the losses entailed thereby must be borne by the lender.

We do not perceive physical inspections of vehicles to be used as collateral for loans to be an unreasonable burden for lenders. Surely any prudent lender must inspect the vehicle, as the bank president here did, if for no other reason to ensure that the vehicle even exists and is in such a condition as to provide sufficient collateral for the amount of the loan sought. For the dealer then to compare the vehicle identification number on the title with the number on the vehicle would be a simple matter and a prudent business practice. All statutorily required numbers and other known numbers could be checked at the same time for obvious alterations, and the lender could note these numbers in its records. If later the numbers were changed and a forfeiture proceeding arose, the lender could then prove the original numbers and its right to the vehicle. Losses which could not be prevented by the above business practices are simply a risk inherent in the lending business. Providing protection against such losses is the function of insurance companies, not of the State.

The appellant finally contends that § 55–5–108 violates the due process clause of the United States Constitution, and the "law of the land" and "taking" clauses of the Tennessee Constitution (Article 1, § 8 and Article 1, § 21) by depriving an innocent lienholder of property without compensation.

The United States Supreme Court has consistently held that the forfeiture of property used in violation of a forfeiture statute does not violate the U.S. Constitution, regardless of the innocence of the claimant. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The Court noted, however, that:

"... it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent.... Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive." 416 U.S. at 689–90, 94 S.Ct. at 2094–95.

The Court ultimately held that the forfeiture in *Calero* could be enforced against innocent claimants since "confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property", *Calero*, 416 U.S. at 688, 94 S.Ct. at 2094, and the claimant had not shown that it did all that it reasonably could to avoid having its property put to an unlawful use.

In the case at bar, the statute declares vehicles on which the identification number has been altered to be contraband, subject to forfeiture. The Mercedes in this case is in violation of the statute. Unlike the possible exception noted in *Calero*, the appellant did not do all that reasonably could be expected to ensure that the vehicle was in compliance with the statute before making the loan. The appellant's president did not check the numbers on the vehicle when inspecting it. On the other hand, enforcement of the forfeiture against an innocent lienholder would probably have the desirable effect of inducing lenders to exercise greater care in loaning money for which a vehicle is collateral, including not only inspecting the numbers on the vehicle but also requiring and checking credit and character references. As the district court said in *U.S. v. One 1972 Ford Pickup*

*Truck Identification No. F10GLP65847,* 374 F.Supp. 413 (E.D.Tenn.1973),

Although failure to make the necessary inquiry does not bar the right of petitioner to remission, it assumed the risk of any record or reputation which the inquiry would have disclosed.

■ Furthermore, compensation for personal property taken from innocent parties under a forfeiture statute is not required by the U.S. Constitution. *McKeehan v. U.S.,* 438 F.2d 739 (6th Cir.1971). Provisions for remission or compensation in a forfeiture statute are matters of legislative grace. *Fell v. Armour,* 355 F.Supp. 1319 (M.D.Tenn.1972).

In considering questions of constitutionality under the state constitution, our Supreme Court has held that all statutes are presumed to be constitutional and that presumption is a strong one. *Smithson v. State,* 222 Tenn. 499, 438 S.W.2d 61 (1969). The police power of the state is an attribute of sovereignty and is of vast and undefined extent. *H & L Messengers, Inc. v. City of Brentwood,* 577 S.W.2d 444 (Tenn.1979). The party challenging a statute as an invalid exercise of the police power has the burden of proving that the statute is arbitrary, capricious and unreasonable, and has no real tendency to effectuate the legislative purpose. *Templeton v. Metropolitan Government of Nashville and Davidson Co.,* 650 S.W.2d 743 (Tenn. App.1983). If the statute has any real tendency to effectuate the legislative purpose, it is not invalid as an arbitrary exercise of the police power. *Phillips v. State,* 202 Tenn. 402, 304 S.W.2d 614 (1957). When a statute represents a valid exercise of the police power, it is not unconstitutional even though property rights are taken or destroyed without compensation. *Spencer-Sturla Co. v. City of Memphis,* 155 Tenn. 70, 290 S.W. 608 (1927). Only an unreasonable taking of property without compensation rises to the level of an unconstitutional deprivation. *Franklin Power & Light Co. v. Middle Tenn. Elec. Membership Corp.,* 222 Tenn. 182, 434 S.W.2d 829 (1968).

In the case at bar, the appellant contends that § 55–5–108 is unconstitutional. The purposes of § 55–5–108 are to prevent the theft of vehicles and to facilitate the detection of theft by forbidding alterations in identification numbers. Other sections of the Code set out the procedure by which restoration of a vehicle or substitution of parts may be legally accomplished (by obtaining a permit authorizing such changes).

■ If such a statutory scheme were not in effect, the State would have no means by which to combat the theft of vehicles. Recognizing that the State would have no way of proving that a vehicle with an altered identification number was stolen, the Legislature rationally placed the burden of proving the original identification number on the claimant. Unlike the statute at issue in *Merchants Bank v. State of Tennessee, Wildlife Resources Agency,* 567 S.W.2d 476 (Tenn.App.1978), § 55–5–108 provides a method by which a claimant may prove his or her right to the property and procure its return. Although the application of this statutory scheme may seem harsh and unfair, it undoubtedly has a real tendency to effectuate the legislative purpose of preventing and detecting theft. The statute is therefore a valid exercise of the police power by the Legislature, and is thus constitutional. Given that fact, this court is powerless to negate the impact of the statute, even though we may feel that its operation is inequitable. Any change must be sought through the legislative process.

The judgment of the court below is affirmed in part and reversed insofar as it ordered the forfeiture of the engine. The cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal equally to the appellant and the appellee.

TODD, P.J. (M.S.), and KOCH, J., concur.