KNOX COUNTY, Tennessee, Earl Hoff-
meister, Suprintendent of Public In-
struction; and the Knox County Board
of Education, Plaintiffs/Appellants and
Cross/Appellees,

v.

The CITY OF KNOXVILLE, James La-
well; and John McCook, Defen-
dants/Appellees, and Cross/Appellants.

Dorothy ALDMON, et al.,
Plaintiffs/Appellants, and
Cross–Appellees,

v.

Charles E. SMITH, Commissioner of
Education, Defendant/Appellee.

Supreme Court of Tennessee,
at Knoxville.

March 12, 1990.

Dale C. Workman, Knoxville, for Knox Co., et al.

W.J. Michael Cody, Atty. Gen. & Reporter, Christine Modisher, Asst. Atty. Gen., Nashville, for intervenors Charles E. Smith.

John T. Batson, Jr., Knoxville, for City of Knoxville.

Charles Hampton White, Nashville, for defendants & intervenors.

J. Anthony Farmer, Knoxville, for Dorothy Aldmon.

## OPINION

O'BRIEN, Justice.

This litigation resulted when the City of Knoxville, acting through appropriate ordinances, held a referendum election by its registered voters to repeal provisions of the city charter permitting operation of a

municipal school district. The referendum was approved, leaving the Knox County Board of Education with the responsibility of providing education to all students within the county borders as of 1 July 1987.

Knox County, Earl Hoffmeister, Superintendent of Public Instruction, and the Knox County Board of Education filed a declaratory judgment action naming the City of Knoxville, James Lawell and John McCook as defendants. The latter two were employees of the City of Knoxville Board of Education and were members of either Plan A or Plan B of the City of Knoxville Pension System. Notice was served on the State Attorney General due to an issue questioning the constitutionality of T.C.A. § 49–5–203. This officer filed a petition to intervene. The State Commissioner of Education, the Knox County Education Association (KCEA) and the Knoxville Education Association (KEA) each filed a petition to intervene which was granted. Dorothy Aldmon and other certified personnel previously employed by the City of Knoxville Schools also filed a complaint for declaratory judgment and injunction, naming as defendants the State Commissioner of Education, Superintendent Hoffmeister, Knox County, the Knox County Board of Education and the City Council of the City of Knoxville as defendants. After consolidation of the separate complaints, cross-complaints, petitions and answers, an evidentiary hearing was conducted and judgment entered by the trial court. Plaintiffs Knox County, et al.; plaintiffs Aldmon et al.; defendants McCook et al, and intervenors KEA and KCEA, filed appeals following entry of the judgment.

The Court of Appeals issued its opinion on 30 December 1987. Plaintiffs Knox County et al.; plaintiffs Dorothy Aldmon, et al.; and defendant McCook and intervenors KEA and KCEA filed applications for permission to appeal to this Court. The applications of Aldmon, McCook, KEA and KCEA were granted. The application by Knox County was denied.

We adopt in substance the factual statement by the Court of Appeals in its opinion to establish the background for this action. The City of Knoxville is a municipal corporation operating under the home rule provisions of Article XI, § 9 of the Constitution of Tennessee. Until 1 July 1987 Knoxville exercised its discretionary power under the provisions of T.C.A. § 49–2–401 et seq, and operated a municipal school system under Articles VI and XII of its charter. In addition, under Charter Article XIII, §§ 1320 through 1380, the city maintained a local pension plan for all of its employees, including employees of the City School System.

The referendum to abolish the Knoxville School System was approved by city voters on 4 November 1986. Thereafter, the City of Knoxville Board of Education notified its employees that the City School System would be abolished and that no employee contracts would be renewed. At the time of the transfer some 1,600 certificated employees, holding teachers' certificates issued by the State Commissioner of Education, were employed in the City School System.

On 1 October 1986, in contemplation of the city's proposed abolition of the City School System, the Knox County Board of Education approved a plan for the creation of a unitary school system which would absorb the former city system. That plan was forwarded to then-Commissioner Robert McElrath of the Tennessee Department of Education. The plan was approved by him subject to certain conditions.

On 1 May 1987, at the behest of the State Treasurer, the Attorney General of Tennessee issued an opinion analyzing six (6) issues, primarily focusing on the effect of T.C.A. § 49–5–203 in reference to the change in structure of the City School System. That opinion was adopted by Commissioner Charles E. Smith successor to Robert McElrath as the State Commissioner of Education. Commissioner Smith also accepted the county board's plan and approved the transfer of the City School System, subject to the preservation of certain rights of the former city teachers.

On 9 April 1986 the County Board and KCEA, collective bargaining agent for county teachers, entered into a memorandum of understanding in accordance with the provisions of the Educational Professional Negotiations Act, T.C.A. § 49–5–601 et seq. This memorandum was to extend until 30 June 1988. On 30 September 1986, under the same statutory provisions, the City Board and KEA, the city's agent, entered into a memorandum of understanding to have been effective until 30 September 1989. The two contracts differed in the number of days of the standard work year, the length of the standard work day, salary schedules and fringe benefits.

Following the abolition of the City School System all of the city's 1,600 certified employees were to be hired by the county, at their election. The KEA would cease to exist as an organization after the transfer of the City School System to county control. The KCEA would then be the sole collective bargaining representative for all County School System employees.

The city's certified employees had been covered under three distinct pension plans, depending upon the dates they were hired. Article XIII of the City Charter provided two of the plans. Plan A covered those employed between January 1963 and December 1976. Plan B covered those employed before January 1963. All personnel employed by the city after January 1977 were covered by the state-wide Tennessee Consolidated Retirement System (TCRS). County school system employees were covered only by TCRS. There was no local pension plan in effect for them. The Attorney General's opinion of May 1, 1987, noted in part:

"That the City of Knoxville teachers who have vested interest in Divisions B and A of the City Retirement System have contractual and constitutional rights to both accrued and future benefits under the system. Therefore, those rights may not be impaired, interrupted, or diminished by the abolition of the City School System. Any diminishment of benefits for future accruals would therefore be a diminishment of rights and benefits in violation of T.C.A. § 49–5–203. Knoxville City Teachers have a protected right to benefits equal to the amount currently provided under Divisions A and B of the city plan, plus the amount currently provided by the State Annuity Statute to members of a local plan."

Local pension plans in Tennessee consist of two separate annuities; the member annuity derived from the employee's contribution to the plan, and the employer annuity derived from the local governing body's contribution to the plan. That is how Plans A and B of the City's Pension System are designed to operate.

TCRS operates essentially in the same fashion for an employee not coming under a local plan. The member annuity is derived from the employee contributions, and the State annuity is derived from the contribution of the employer—typically, the State or one of its political or administrative subdivisions.

Whether or not a teacher is a member of TCRS or a local plan, Tennessee pays the State annuity into TCRS. Upon the teacher's retirement, that State annuity is then paid to the local pension system in six of the seven local pension plans in Tennessee which operate under the provisions of T.C.A. § 8–35–303, and thus effectively reimburses the local governing bodies' employer annuity up to the amount of the State annuity. In Knoxville, however, at the request of the City Pension System in 1971, TCRS was to "henceforth pay the entire amount of the State annuity directly to the members" in accordance with the provisions of T.C.A. § 8–35–303(5). As a result, Plan A and B members of the City Pension would receive a retirement allowance based upon three (3), rather than two (2), annuities, and thus would receive a larger retirement benefit than members of the same age, years of service, and rate of pay of other local pension systems or of TCRS.

A 1986 study by Joseph McAlister, actuary for the city's plan and for TCRS, indi-

cated that the City Plan's accrued liability—the difference between actual employer contributions and previously estimated employer contributions required—was $38,-213,530 for Plan A and $53,309,610 for Plan B. McAlister set the total accrued liability of the City Board for past service at approximately $50,000,000, and asserted that the county's future cost for assuming the teachers' portion of the City Plan, based on present value, would be between fifty and fifty-five million dollars, if active former city employees continued to accrue future service in the City Plan. If the former City Plan members were to become TCRS members, the county would have no liability for their future service costs.

As a result of the abolition of the city system, the county board was to assume the operation and administration of education throughout Knox County, including the former city school system. The only additional funds that the county would receive from the State as the result of the City School System's abolition are the foundation funds that the city received on an average daily attendance (ABA) basis.

The abolition of the City School System included repealing the City Charter Tenure System provisions. The county operates under a County Tenure System enacted by private act. The county's organizational plan for expansion to a single school system reduced the number of directors, assistant superintendents, and supervisors from the total number formerly employed in the two systems. All former city personnel desiring employment were required to fill out a normal application for employment with the county, and the county board offered contracts through a formal election process.

The two cases were consolidated for trial, and came on for a hearing on 29 and 30 June 1987. The chancellor issued an extensive and comprehensive memorandum opinion which was incorporated by reference into his final judgment entered on 16 July 1987.

The trial court held that T.C.A. § 49-5-203 was wholly constitutional inso-

far as it was challenged in this cause. He upheld the abolition of the Knoxville City School System. For the purposes of this litigation he utilized the definition of teaching found in T.C.A. § 49-5-203 and that for all other certified personnel employed by local boards of education as defined in T.C.A. § 49-5-501(10). He held that as of 1 July 1987 a single school system existed within the boundaries of Knox County to be operated and administered by the Knox County Board of Education. The authority and obligation of the county system to employ a teacher for the 1987–88 school year paralleled that of the City Board of Education had the creation of a single school system not occurred. He held that the memorandum of understanding between the Knoxville Education Association and the City of Knoxville Board of Education under the provisions of T.C.A. § 49-5-601 et seq, was protected under the contract rights included in T.C.A. § 49-5-203(c). The terms of that memorandum of understanding were binding on the Knox County Board during its term, except for procedural matters for teachers which were governed by the provisions of the memorandum of understanding with the Knox County Education Association, its rules and regulations, including grievance procedure. The tenure provisions contained in the Private Acts of 1937, Chapter 18, as amended, adequately protected the tenure rights of city teachers and were the sole exclusive tenure act and procedures applicable to employees of the Knox County Board of Education.

All the principal parties in interest carried the case to the Court of Appeals. That court affirmed the chancellor's opinion in all respects except for a modification regarding tenure rights of the City System Employees. The trial court held that Article XII of the City Charter, pertaining to the tenure rights of city teachers, had been validly repealed by the abolition of the City School System. The Court of Appeals held that under the terms of T.C.A. § 49-5-203 the county had no broad, general discretion regarding tenure status of the city teach-

ers. They modified the chancellor's judgment to hold the county must provide former city employees the same substantive tenure rights afforded them by Article XII of the City Charter.

An application for permission to appeal to this Court was filed by Knox County; Earl Hoffmeister, Superintendent of Public Instruction; and the Knox County Board of Education which was denied. Applications filed by John McCook; Knoxville Education Association; Knox County Education Association; and Dorothy Aldmon, et al; were granted.

The issues presented by the various appellants generally revolve around the rights of the vested City of Knoxville teachers to direct receipt of the State Annuity under the provisions of the City of Knoxville Pension Plan.

The Employees Pension Fund for the City of Knoxville does not conform to the statutory scheme established by the Legislature as the teachers local retirement system, T.C.A. § 49-5-901 et seq. Nevertheless, provision has been made for such pension systems in the legislation creating the Tennessee Consolidated Retirement System.

The State Teacher's Retirement System was enacted by the Public Acts of 1945 (T.C.A. § 49-1501 et seq.). In 1971 the managing board of the Knoxville City employees pension fund adopted a resolution under the provisions of T.C.A. § 49-1542 as amended by Chapter 252 of the Public Acts of 1971. This amendment added a new sentence to the end of subsection (a) of the statute as follows:

"Notwithstanding the provisions of this section to the contrary the Board of Trustees of the Tennessee Teachers Retirement System shall, upon request of the managing board of a local retirement fund, henceforth pay the entire amount of the State annuity directly to the members of said local retirement fund."

The resolution followed the language of the statute and requested the State annuity

be paid directly to the members of the local retirement fund. Apparently this procedure has been followed from June 1971 until the present.

Public Chapter 252 was passed on 11 May 1971. The statute was further amended on 13 May 1971 by Public Chapter 279, to add subsection (k) as follows:

"(k) Notwithstanding any other provisions to the contrary, the Board of Trustees shall pay directly to the retired members of a local fund whatever annuities are provided for them whenever the managing board of said local fund is a pension board created by the charter of a municipality which has adopted or hereafter shall adopt home rule by the affirmative vote of a majority of the qualified voters voting thereon, or as the said charter may be amended from time to time, provided that the said pension board is not the Board of Education or does not include any member of the Board of Education of the said municipality."

On 26 May 1971 a further amendment by Public Chapter 409 added subsection (*l*):

(*l*) Notwithstanding any provision of the law or municipal charter provisions to the contrary, the governing body of any political subdivision having a local retirement fund from which retired members received benefits may by ordinance or resolution authorize the Board of Trustees to pay directly to the retired member of such local retirement fund whatever State annuities are provided for them. The adoption of such ordinance or resolution shall be permanent and such action may not be repealed to the detriment of any retired member."

T.C.A. §§ 49-1501—1549 were repealed by the Acts of 1972 (Adj.S., Ch. 814, § 18). The State Teachers Retirement System was superseded and replaced by the Tennessee Consolidated Retirement System. The superseded § 49-1542 which had been renumbered T.C.A. § 8-3933, was incorporated into the new retirement act at T.C.A. § 8-35-301 et seq. Neither of the amend-

ments to T.C.A. § 49–1542 by Chapter 279 or Chapter 409 of the Public Acts of 1971 were included in the TCRS legislation. T.C.A. § 8–35–303(5) contains the provision mandating payment of the entire State annuity directly to the members of the local retirement fund upon the request of its managing board.

The trial judge and the Court of Appeals, basing their decision on their interpretation of the word "henceforth" in the statute, each determined that the language of the statute left the managing board of the Knoxville retirement fund with the unrestricted option of redirection, that is, the right to recall their previous request to the Board of Trustees of TCRS to pay the entire amount of the State annuity to the teacher members of the fund.

We disagree with that conclusion. The members of the City Pension System are entitled to all the benefits provided for them in accordance with their contractual relationship with the City of Knoxville under the provisions of the pension act. It is not questioned that they have a vested interest in those benefits due them in accordance with its terms. The City of Knoxville has recognized that relationship. The evidence seems to indicate that all or nearly all of Plan B members are now in a retired status, as are a considerable number of those teachers who are vested in Plan A. These retirees have been receiving direct payment of the full State annuity since their retirement, as well as their benefits under the plan. They have an accrued and vested right which cannot be impaired. See *Blackwell v. Quarterly County Court etc*, 622 S.W.2d 535, 541 (Tenn.1981).

The rights of those members still engaged as active teachers are also protected under the provisions of T.C.A. § 49–5–203 which provides for the preservation of those rights in event of a change in the government structure of a school system or institution through the process of abolition or transfer of the control and operation of a system to a different administration. Subsection (b) of that statute con-

tains the requirement that in the event of such an occurrence the rights and privileges of such a teacher shall continue without impairment, interruption, or diminution as obligations of the new government, organization or administration. The evidence in the case demonstrates the City of Knoxville's agreement to fund the accrued liability up until the date of the abolition of the pension plan. This agreement certainly extended through December 1976 and includes the right of the vested teachers to receive payment of the full annuity. From and after January 1977 all newly employed teaching personnel were covered as members of the TCRS and not members of the city plan.

We are of the opinion the rule established in *Blackwell*, supra, prevails in this case. This rule permits reasonable modifications where necessary to protect or enhance actuarial soundness of a retirement plan, provided that no such modification can adversely effect an employee who has complied with all conditions necessary to be eligible for a retirement allowance. There is a statement by counsel in this record that actuarial soundness of the Knoxville City Pension Plan was not an issue. However the record is clear that the plan has been and is seriously underfunded. There is nothing in the record to indicate why the pension board resolved to have the total State annuity paid directly to the members of the fund. However, under the holding of this Court in *Blackwell*, any alteration of the plan could not affect the retirement benefits of teachers whose rights have vested either by their retirement or by their having served the necessary number of years of creditable service to be entitled to a retirement allowance.

It was argued in the *Blackwell* case, that future benefits of participating members in the retirement plan could be diminished if necessary for actuarial soundness. This Court held to the contrary with respect to employees who had ten years' creditable service at the effective date of the amendment to the plan. The Court said:

Those employees, however, as of the effective date of the amendment, were eligible for retirement benefits on a base consisting of twelve months' earnings immediately prior to retirement. We do not believe that this right should be or that it could validly be taken from them without their consent, even though they continued to be employed by the County and to accrue benefits in the future. 622 S.W.2d at 543.

Consistently with that case and with the provisions of T.C.A. § 49–5–203, any future rescission of direct payments of the state annuity may not adversely affect the retirement allowances of members of Plan A or Plan B who have retired or who are still actively engaged in teaching.

The judgment of the trial court is affirmed as modified herein in reference to the vested rights of the pension plan members. The cause is remanded to the trial court for such other and further orders or decrees which may be required. The costs of this appeal are taxed equally to the City of Knoxville and to Knox County.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ., concur.