# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 6, 2004 Session

## JOYCE HARDAWAY, ET AL. v. BOARD OF EDUCATION OF THE HAMILTON COUNTY SCHOOLS

**Appeal from the Chancery Court for Hamilton County**
**No. 00-0045      W. Frank Brown, Chancellor**

**FILED MARCH 18, 2004**

**No. E2003-01547-COA-R3-CV**

The City of Chattanooga abolished its school system which was then integrated into the Hamilton County system. Two and one-half years later the Plaintiffs, who were administrators in the City system, filed this action claiming that under Tennessee law their compensation was unlawfully reduced by the Board of Education of Hamilton County. The County insisted that the Commissioner of Education of Tennessee approved the Personnel Plan proposed by the Superintendent of Education of Hamilton, as required by law, and that the Plaintiffs were paid in accordance with the Plan. Moreover, the Collective Bargaining Agreement between the City and its teachers expired concurrently with the abolition of the school system, and the Plaintiffs' salary agreement also expired. Further, the salary of Ms. Hardaway, paid by the City, was in excess of the negotiated amount, and the duties of Ms. Settles were substantially less burdensome in her new position.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

Richard Lee Colbert, Nashville, Tennessee, Attorney for Appellants, Joyce Hardaway and Eva Settles.

William H. Pickering and W. Jack Benson, Jr., Attorneys for Appellee, Board of Education of the Hamilton County Schools.

# OPINION

## I.

Before June 30, 1997, the City of Chattanooga and Hamilton County each operated a school system. On that date, the City's repeal of its Charter provisions for the operation of a school system became effective, and the Plaintiffs, who were employed by the City system as administrators, became employees of the Hamilton County Board of Education in administrative positions at reduced salaries.

Plaintiffs' new assignments and salaries became effective July 1, 1997. On January 13, 2000, they filed this action alleging that reductions in their salaries violated Tenn. Code Ann. § 49-5-203. The Hamilton County Board of Education answered and alleged, *inter alia*, that the positions and salaries assigned to Plaintiffs were consistent with the applicable collective bargaining agreement, that the Personnel Plan for the County schools was specifically approved by the Tennessee Commissioner of Education, and that the Plaintiff Hardaway had been receiving a salary, from the City, in excess of her entitlement.

The parties filed cross motions for summary judgment, and the motion of the Defendant was granted. The trial judge ruled that neither Plaintiff could recover because their compensation in their new positions was fixed by the Agreement. He denied recovery for other reasons which need not be discussed and are pretermitted. The essence of his ruling was that the Plaintiffs' positions, duties and responsibilities with the Hamilton County Schools were different from those which they had with the Chattanooga Public Schools.

Plaintiffs appeal and present for review the issue of whether the trial judge erred in concluding that the salaries of the Plaintiffs could lawfully be reduced in light of Tenn. Code Ann. § 49-5-703 and Tenn. Code Ann. § 49-3-306(b). The Defendant presents five issues for review. In light of our resolution of this case we have concluded that pretermission of these issues is appropriate.

## II.

Before July 1, 1997, Plaintiffs were employed by the Chattanooga Public School System as central office administrators. Hardaway held the position of Math Supervisor and Settles was the Director Student Services. Both Plaintiffs were members of the bargaining unit represented by the Chattanooga Education Association ("CEA") and were subject to the collective bargaining agreement between the Chattanooga Board of Education and the CEA. Their compensation was contractual, and each understood that the Contract, which fixed their salaries, would expire June 30, 1997, at which time their salaries would be subject to negotiation.

It is not disputed that Hardaway was being paid a salary in excess of that to which she was entitled under the City Contract. She was paid $70,583 for the 1996-97 school year but conceded

that the Contract provided that a person with her educational degree and years of experience would receive a salary of $60,676. The discrepancy between her actual salary and the contractual salary commenced with her decision to transfer to the central office on June 15, 1992, when she accepted a transfer from her position as Principal of Chattanooga High School to the central office where she was designated as a Principal on Special Assignment. During that year, she worked on a Foundation Grant for Middle School Environment and continued to receive the larger principal's salary.

Her job designation as Principal on Special Assignment was for the 1992-93 school year only. Effective July 1, 1993, she was appointed Supervisor of Technical Support Services, and thereafter was appointed Math Supervisor in May of 1995, but continued to be paid as though she were the Principal of Chattanooga High School. She was no longer in a principal's position, but believed that her excess compensation was justified because "that's what I was paid in order to come to the central office" from her principalship. She conceded that she had opportunities to return to principalships (with the higher compensation those positions provided ) between 1992 and 1997.

She had no information that the Chattanooga Board of Education ever approved the continuation of her principal's pay beyond the 1992-93 school year.[1] The issue of unauthorized salaries being paid to central office administrators was a subject of controversy during the spring and early summer of 1997, and the Chattanooga Board of Education *agreed to continue the excess salaries only until July 1, 1997, after which salaries would be adjusted consistent with actual job assignments.* This point is significant.

Settles had a broad range of responsibilities in the City system which required 19 employees to report to her.

Because the City repealed all provisions of its Charter relative to the operation of a school system which onerated the County School Board with the burden and responsibility of operating all public schools in Hamilton County, Dr. Jesse Register, Superintendent of the Hamilton County Schools, as provided by Tenn. Code Ann. § 49-5-203, developed and submitted to the Tennessee Commissioner of Education, Dr. Jane Walter, a Personnel Plan for County-Wide School System which she approved on April 10, 1997. It preserved the Superintendent's right to reassign administrative personnel, *including those formerly employed by the Chattanooga School System.* The Personnel Plan provided that during the first year of operation of the county-wide school system the Superintendent would attempt to leave teachers and principals in the schools where they were assigned the previous year, but that certificated administrators formerly employed by the Chattanooga Public Schools were subject to reassignment to appropriate positions in the Hamilton County Department of Education. It was further provided that all assignments of certificated personnel would be in the discretion of the Superintendent who reserved the right to reassign personnel in order to promote the efficient operation of the school system.

---

[1] The City Board's records revealed that Hardaway's salary was to be frozen to the senior high school principal's level for one year.

Further, and with continued significance, The Personnel Plan provided that all certificated personnel employed by the Hamilton County Department of Education after June 30, 1997, would *be paid the salaries applicable to the positions to which they were assigned or transferred.*

The Defendant argues that reference must be made to the City Contract in order to determine the salary rights of the Plaintiffs. We agree. Salaries paid to members of the CEA bargaining unit, including central office administrators such as Plaintiffs, were specifically governed by the City Contract.

It was understood that the City Contract, which fixed all salaries, would expire June 30, 1997, and that a new CEA contract would have been negotiated if the Chattanooga Public Schools had continued in existence. Hardaway conceded that whatever salaries were negotiated between the Chattanooga Board of Education and the CEA for supervisors such as herself would have been the salaries the supervisors would have been entitled to receive.

In recognition of the fact that when the City Contract expired the City teachers would thereafter be in the County bargaining unit, the Personnel Plan provided that, effective July 1, 1997, teachers previously employed by the Chattanooga Public Schools would become part of the bargaining unit represented by the Hamilton County Education Association (the "HCEA") and would be subject to the collective bargaining agreement between the County School Board and the HCEA.[2]

A major reorganization occurred when the central offices of the two school systems were combined. Various administrators were reassigned, and approximately 25 central office positions were eliminated. The Plaintiffs were assigned to positions in the restructured central office. Hardaway was assigned to the position of Mathematics Coordinator, and Settles was assigned to the position of Director Student Assignment. However, Hardaway remained in the Mathematic Coordinator position only a few months; in October of 1997, she applied for and was awarded a totally different job, that of Director of Minority Affairs and Recruitment.

Settles' new position differed from the position she held with the Chattanooga Public Schools, and her responsibilities were lessened. In contrast to her broad responsibilities as Director of Student Services with the City Schools with a staff of 19 individuals reporting to her, her responsibilities as Director Student Assignment with the Hamilton County Department of Education were limited primarily to student assignments and transfers, and only two individuals, a secretary and a data clerk, reported to her in her new position.

Hardaway's salary as Mathematic Coordinator was specifically governed by the Memorandum of Agreement. The salaries for central office administrators and supervisors below the Director level were specified in the Administrator Salary Scale. The position of Mathematics Coordinator is below Director level. When she became employed by the Hamilton County

---

[2] Salaries and wages are mandatory subjects of bargaining. Tenn. Code Ann. § 49-5-611(a).

Department of Education effective July1, 1997, she was paid the salary specified in the Administrator Salary Scale for a person with her educational degree and years of experience.

## III.

The Memorandum of Agreement provided that the salaries for Directors and Assistant Superintendents were to be determined by the County School Board on the recommendation of the Superintendent. Consistent with the Memorandum of Agreement and as expressly authorized by the Personnel Plan approved by the Tennessee Commissioner of Education, the County School Board established the salaries which Settles and other Directors were to be paid effective July 1, 1997.

Both Plaintiffs began receiving their salaries from the Hamilton County Department of Education effective July 1, 1997. Neither Plaintiff filed a grievance regarding her salary under the Grievance Procedure provided in the Memorandum of Agreement.

## IV.

Tennessee Code Annotated § 49-5-203 provides:

> (a) The change in governmental structure of a school system or institution through the process of annexation, unification, consolidation, abolition, reorganization, or transfer of the control and operation of school system or institution to a different type governmental structure, organization or administration shall not impair, interrupt or diminish the rights and privileges of a then existing teacher, and such rights and privileges shall continue without impairment, interruption or diminution.

> (b) If the teacher becomes the employee of another school system or institution as a result of a change in the governmental structure, then the rights and privileges of such a teacher shall continue without impairment, interruption or diminution as obligations of the new government, organization or administration.

> (c) 'Rights and Privileges' as used in this section, includes, but is not limited to, salary, pension or retirement benefits, sick leave accumulation, tenure status and contract rights, whether granted by statute, private act or governmental charter.

> (d) Prior to the change in any governmental structure or organization becoming effective, the Commissioner of Education shall determine that the rights and privileges protected by this section are not impaired, interrupted or diminished. In addition to the remedies

available to a teacher aggrieved by change in the governmental structure, organization or administration of a school system or institution, the Commissioner is authorized to withhold state funds in the enforcement of this section.

The Plaintiffs are entitled to the protection afforded by this statute, which in plain language provides that a change in governmental structure of a school system "shall not" impair or diminish the rights and privileges of a then existing teacher. *See, Knox County v. City of Knoxville*, 786 S.W.2d 936 (Tenn. 1990). We agree with the Defendant that Tenn. Code Ann. § 49-5-203 gives a teacher no greater rights against her new employer than those she would have had against her former employer. Plaintiffs' salary rights with the Chattanooga Public Schools were governed by and dependent upon a Collective Bargaining Agreement which expired by it terms on June 30, 1997. They could not have compelled the City School Board to continue their existing salaries beyond June 30, 1997, and their authorized bargaining representative would have been required by Tennessee law to return to the bargaining table and renegotiate salaries and other terms and conditions of employment. Effective July 1, 1997, the Plaintiffs became subject to the Memorandum of Agreement between the County School Board and the HCEA. Plaintiffs' *new salaries were consistent with and specifically authorized both by that Agreement and by the Personnel Plan approved by the Tennessee Commissioner of Education.* Tennessee Code Annotated §49-5-203 protects a teachers rights and privileges, but the *receipt of an excess salary is not a right that was afforded protection.* Moreover, Tenn Code Ann. § 49-3-306(c) provides:

> A Board may, with the approval of the Commissioner, make such readjustment in the salary of licensed personnel as may be necessary to place the salary in fair relation to the salaries of other licensed personnel in the same LEA with comparable tenure, responsibility, training and experience . . . .

Plaintiffs argue that the "statute was not intended to shackle a teacher to the duties she held at the time of abolition," and that the construction adopted by the Chancellor will "eviscerate the protection of [the statute]" by allowing a new school system to impair the "rights and privileges" of teachers simply by giving them "sightly different duties" in the new system. This argument assumes that the Commissioner of Education will fail in his/her duty, and moreover, that Tenn. Code Ann. § 49-5-203 creates a perpetually guaranteed salary for all "teachers" in a school system, so long as they merely become "employees" of a new system, without regard to their assigned duties.

## V.

The essential argument of the Plaintiffs is that any teacher in a prior system *who holds a position whatsoever in a new system* is absolutely entitled to the rate of pay the individual received in the prior system, regardless of any change in the individual's duties, job title or responsibilities. We cannot agree. According to this argument, if the City Board had perversely doubled the Plaintiffs' salaries one week before the City system was abolished, the County system would be

required to pay them accordingly. It would also emasculate the collective bargaining system, together with the Personnel Plan approved by the Commissioner of Education.

As we have stated, the Plaintiffs' have no greater rights as employees of the Hamilton County Schools than they had as employees of the Chattanooga System. The salaries which they were entitled to receive as City school administrators were established pursuant to a Collective Bargaining Agreement and could not be guaranteed in perpetuity. Plaintiffs recognized and understood that their contractual salary rights would expire on June 30, 1997, and that salaries would then be a matter of negotiation between the Chattanooga Board of Education and the CEA.

**VI.**

In sum, the unification of the two school systems could not and did not *increase* the rights which Plaintiffs would have had as City school employees. This point was made clear by the Supreme Court:

> The authority and obligation of the county system to employ a teacher for the [next] school year paralleled that of the City Board of Education had the creation of a single school system not occurred.

***Knox County v. City of Knoxville,*** 786 S.W.2d 936, 939 (Tenn. 1990). Hardaway cannot enforce an alleged non-existent right, *i.e.*, to be paid a salary in excess of that applicable to her position. The continuation of her salary as a principal was authorized only for the one year of her "special assignment." Beginning with the 1993-94 school year, she was assigned a regular position as a central office supervisor and should have been paid the salary applicable to a supervisor with her education and experience. We agree that resort to Tenn. Code Ann. § 49-5-203 is not available to require the continuation of excess compensation.[3] As we have stated, when the Personnel Plan was submitted to the Tennessee Commissioner of Education, it was understood that upon expiration of the City Contract the former City employees would be included in the County bargaining union and therefore be covered by the Memorandum of Agreement between the County School Board and the HCEA. When Hardaway became a County employee effective July 1, 1997, she was paid a salary applicable to the position which she requested and accepted.

The Personnel Plan specifically noted that some positions were not included in the Memorandum of Agreement's salary schedules, and provided that salaries for those positions would be determined by the Superintendent and/or County School Board, as appropriate. Settles' salary with the Hamilton County Schools, effective July 1, 1997, was fixed in accordance with the procedure provided by the Plan, which was approved by the Tennessee Commissioner of Education

---

[3] Although it is unclear whether Hardaway is claiming a contract right to her excess salary, it is well settled that Tennessee courts cannot be used to enforce obligations arising our of a contract or transaction which is illegal. ***Whitley v. White***, 176 Tenn. 206, 216, 140 S.W.2d 157, 161 (1940); ***Ledbetter v. Townsend***, 15 S.W.3d 462, 464 (Tenn. Ct. App. 1999).

pursuant to Tenn. Code Ann. § 49-5-203 consistent with the Memorandum of Agreement to which the Plaintiffs were subject.

The judgment is affirmed at the costs of the Appellants, Joyce Hardaway and Eva Settles.

_____
WILLIAM H. INMAN, SENIOR JUDGE