**Jackie REDD, Petitioner–Appellant,**

v.

**TENNESSEE DEPARTMENT OF SAFETY, et al., Respondent–Appellee.**

Supreme Court of Tennessee,
at Nashville.

Feb. 27, 1995.

**333**

Jackie Redd, Mountain City, pro se.

Charles W. Burson, Atty. Gen. & Reporter and Rebecca Lyford, Asst. Atty. Gen., Nashville, for appellee.

*OPINION*

CHARLES H. O'BRIEN, Special Justice.

This is an appeal from a Court of Appeals' Rule 10 order affirming the trial court and the Tennessee Department of Safety's dismissal of the petitioner's claim for the return of forfeited personal property confiscated in connection with a drug arrest. Both lower courts and the Department of Safety found that the petitioner failed to comply with filing deadlines imposed by the Uniform Adminis-

trative Procedures Act, under T.C.A. § 4–5–322, and, therefore, any claim that the petitioner may have had was time barred. The issue presented on appeal concerns whether due process, under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Tennessee Constitution, require that the petitioner should have received prior notice of the Department of Safety's Order of Forfeiture of the confiscated property.

The facts surrounding this appeal are largely undisputed. On 18 January 1990, the First Judicial drug Task Force of the Tennessee Department of Safety conducted a raid at the mobile home of Diane and James Scalf, both of whom are acquaintances of the petitioner. During the raid, the Task Force confiscated four to five ounces of marijuana, 3 firearms, and $3,480 dollars in cash on the ground that the property was narcotics related and subject to seizure and forfeiture under T.C.A. § 53–11–201, et seq. It is the confiscated currency that is the focus of the petitioner's claim.

While searching the Scalf home, Larry Markland, Task Force Agent, discovered the cash inside the dust bag of the Scalf's vacuum cleaner. On the night of the raid, Diane Scalf, under the supervision of Agent Markland, wrote and signed a handwritten, three-page statement concerning, *inter alia*, how the $3,480 came into her possession.

The money that was in the vacuum cleaner bag was given to me by Jackie Redd on Tuesday night when he came to the trailer. Jackie had the money in a plastic bag. Then I took the money out of the plastic bag and put it in the paper bag. The money was damp when I took it out of the bag. The money that was found was all there was. He told me to use it if I needed to. To pay my bills. Because he knew Keith [Scalf] was going to jail and he knew I didn't work and he also knew I was two or three payments behind on my trailer payment. Jackie came to my trailer about 1:30 a.m. Wednesday morning....

... Jackie had the bag of money in his hands and he said here you are going to need this. I asked him why and I was going to need the money and he said be-

cause he had a feeling that Keith wasn't going to be around.

The next day, 19 January 1990, petitioner Jackie Redd was arrested and charged with the murder of his roommate, Tom Bishop. Diane's husband, James Scalf, was at Bishop's and Redd's trailer at the time of the murder and investigators initially considered him a suspect in Bishop's murder. However, the police eventually discovered that, although James Scalf was present when the murder occurred, he was unconscious from over-imbibing when Jackie Redd shot his roommate.

In the subsequent jury trial, Redd was found guilty of First Degree Murder and sentenced to life imprisonment. His conviction was affirmed by the Court of Criminal Appeals and his Rule 11 Application for Permission to Appeal was denied.[1]

The Department of Safety furnished a Notice of Property Seizure and Forfeiture of Conveyances, containing a list of the confiscated property, to Diane Scalf on 18 January 1990, the same day of the drug raid. James Scalf, incarcerated at the time, received the Department's notice on 22 January 1990. The Department of Safety did not provide notice of the seizure to the petitioner, Jackie Redd.

The Department received no claims on the property seized at the Scalf home and on 21 March 1990 released an Order announcing that the money was to be forfeited to the State pursuant to T.C.A. § 53–11–409. The Order listed James Scalf as the party from whom the property had been confiscated.

The State argues that, based on the facts known to the seizing agent at the time of the seizure, the agent had a reasonable belief that Jackie Redd had made a gift of the money to Ms. Scalf and that he no longer had an ownership interest in the property. Therefore, the State concludes, since Redd had no interest in the property, he was not entitled to notice of the seizure.

The petitioner argues that the State had knowledge of his ownership interest in the forfeited property and, therefore, both federal and state due process required the Department to have made a reasonable effort to notify the petitioner of the seizure and the possible forfeiture of the property.

The statute controlling an agency's procedure for the confiscation of suspected narcotic related property, in effect at the time of the seizure of the cash in question, T.C.A. § 53–11–201 (1989 Supp.), provided in pertinent part:

(a)(1)(A) In all cases of seizure of any narcotic drugs or marijuana or any vehicle, aircraft or boat or other property subject to forfeiture under the provisions of this chapter, the officer or other person making the seizure shall deliver to the person, if any, found in possession of such property or conveyance, a receipt. The receipt shall state a general description of the seized property or conveyance, the reasons for the seizure, the procedure by which recovery of the property or conveyance may be sought, including the time period in which a claim for recovery must be presented, and the consequences of failing to file within the time period. **If the person found in possession of the conveyance is not the sole unencumbered owner of same, the department of safety shall make a reasonable effort to notify the owner and/or lienholder of the seizure by furnishing all parties known to have an interest in the conveyance with a copy of the receipt.** A copy of the receipt shall be filed in the office of the department of safety and shall be open to public inspection. [Emphasis added.]

 One of the basic constitutional guarantees, procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Tennessee Constitution, prohibit the forfeiture of private property without first providing those with an interest in the property to a hearing held at a reasonable time and in a meaningful manner. Notice must be given in a manner reasonably calculated to notify all interested parties of the pending forfeiture of the property in order to afford the opportunity to object to

---

1. The Court of Criminal Appeals' Opinion confirming Redd's conviction, Opinion No. 03C01– 9101–CR–0007, filed 25 July 1991, is unpublished, 1991 WL 136316.

the State's taking. *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983); *Robinson v. Hanrahan,* 409 U.S. 38, 39–40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972); *Mullane v. Central Hanover Bank and Trust Company,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *see also, Merchants Bank v. State Wildlife Resources Agency,* 567 S.W.2d 476 (Tenn.App.1978); *Doe v. Norris,* 751 S.W.2d 834 (Tenn.1988). One of the essential elements of due process in the confiscation and forfeiture of private property is adequate notice to all interested parties. *Greene v. Lindsey,* 456 U.S. 444, 449, 102 S.Ct. 1874, 1877–78, 72 L.Ed.2d 249 (1982).

 Statutory authority empowering the State to seize and forfeit private property inherently carries with it an obligation to insure that the power is not abused. In T.C.A. § 53–11–201, the General Assembly has granted broad power to the Commissioner of Safety to determine whether confiscated property is subject to forfeiture. Once a seizure is made, the burden falls upon the owner, or someone with a legal interest in the property, to file for its return. Failure to make a claim within the statutorily prescribed time will result in a summary forfeiture. This exercise of police powers requires black letter compliance to procedural rules intended to safeguard the due process rights of citizens.

 Forfeitures are not favored by the law. Statutes authorizing such action are to be strictly construed. *See Williams v. City of Knoxville,* 220 Tenn. 257, 416 S.W.2d 758 (1967); *Biggs v. State,* 207 Tenn. 603, 341 S.W.2d 737 (1960). Before a confiscation statute may be used to deprive a person of his property, the facts must fall both within the spirit and the letter of the confiscation law under which the sovereign proposes to act. *Biggs v. State, supra.*

 Under the facts presented on this appeal, it is clear that the Department of Safety possessed the requisite knowledge of the petitioner's possible proprietary interest in the seized property. Such knowledge required the Department to give notice to the petitioner of the seizure and possible forfei-

ture of the property. For the reasons stated herein, the cause is remanded to the trial court for a hearing on the merits. Appellate costs are taxed to the respondent-appellee.

ANDERSON, C.J., and DROWOTA, REID and BIRCH, JJ., concur.