IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 2020 Session

## WANDA TUBBS v. JEFF LONG, AS COMMISSIONER OF TENNESSEE DEPARTMENT OF SAFETY AND HOMELAND SECURITY[1]

**Appeal from the Circuit Court for Davidson County**
**No. 18C2254      Kelvin D. Jones, Judge**

_____

**No. M2019-00627-COA-R3-CV**

_____

This case involves the seizure of a Michael Kors bag containing approximately $95,000 in United States currency by police officers who were executing a search warrant at the petitioner's property during a criminal investigation in May 2017. The petitioner rented the home to her son and his girlfriend, but the petitioner did not reside there. In addition to the $95,000 at issue, officers also discovered at the residence other paraphernalia, including cocaine, marijuana, prescription drugs, several handguns, electronic scales, a money counter, and additional currency. The total amount of currency discovered by officers at the residence was $153,652. Officers seized all currency and sought a forfeiture warrant on the grounds that the money constituted proceeds considered traceable to a violation of the Tennessee Drug Control Act. *See* Tenn. Code Ann. § 53-11-451(a)(6)(A) (Supp. 2019). The petitioner's son subsequently pled guilty to several counts of possession with the intent to distribute controlled substances and being a felon in possession of a firearm. The petitioner filed a petition with the Tennessee Department of Safety and Homeland Security ("the State"), requesting an administrative hearing regarding "the majority of" the amount of currency that was seized by law enforcement. Following a hearing, the administrative law judge ("ALJ") entered a final order, determining that the personal property in question was properly seized and thereby subject to forfeiture. The petitioner subsequently filed a petition for judicial review with the Circuit Court of Davidson County ("trial court"). Following a hearing, the trial court, employing a substantial and material evidence standard of review, affirmed the ALJ's determination that the currency was subject to forfeiture. The petitioner has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

---

[1] We note that during the pendency of this case, Commissioner Jeff Long was substituted for David Purkey, the former commissioner of the Tennessee Department of Safety and Homeland Security.

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Drew Justice, Murfreesboro, Tennessee, for the appellant, Wanda Tubbs.

Herbert H. Slatery, III, Attorney General and Reporter, and Miranda Jones, Assistant Attorney General, for the appellee, Commissioner, Tennessee Department of Safety and Homeland Security.

**OPINION**

I. Factual and Procedural Background

This appeal arose from the trial court's order affirming the ALJ's findings and determination that $153,652 in United States currency was properly seized by the State as proceeds from drug trafficking and, as such, was subject to forfeiture. The petitioner, Wanda Tubbs, co-owned the mobile home where the seizure occurred ("the residence") but did not reside there. Ms. Tubbs leased the residence to her son, Terrance Martin, who was engaged to be married to Shaundra Smith. Mr. Martin and Ms. Smith lived together in the residence, along with Ms. Smith's seventeen-year-old son, I.S., at all times relevant to this appeal.

According to essentially undisputed findings of fact contained in the ALJ's order, three individuals broke into the residence on February 17, 2017, and held Ms. Smith and I.S. at gunpoint. Mr. Martin was not present at the time. It is further undisputed that the intruders demanded money stored in a safe within the house and stole approximately five to ten thousand dollars. After the intruders allegedly forced I.S. to drive them to a location where they subsequently fled, Ms. Smith and her son reported the incident to the Cannon County Sheriff's Department ("Sheriff's Department"). Investigator Brandon Gullett, a narcotics officer with the Sheriff's Department, responded to the call. Upon Investigator Gullett's arrival at the residence, he detected the aroma of raw marijuana emanating from the house. When Investigator Gullett entered the home, he and accompanying officers located approximately one ounce of raw marijuana and some remnants of smoked marijuana, as well as a marijuana grinder and a set of electric scales.

Upon conducting his investigation of the home invasion, Investigator Gullett determined that I.S. had been found in possession of marijuana on a prior occasion. Investigator Gullett also learned that Mr. Martin lived at the residence and was on probation for felony drug charges. Subsequently, Investigator Gullett conducted surveillance of the residence to determine if drug trafficking activities were taking place.

On May 4, 2017, Deputy Brandon King with the Sheriff's Department arrived at the residence to serve Mr. Martin with civil process. I.S. came to the door and accepted

- 2 -

the paperwork from Deputy King. It is undisputed that Deputy King reported to Investigator Gullett that he detected a strong odor of raw marijuana coming from the residence. Investigator Gullett subsequently obtained a search warrant, which he executed at the residence. While conducting the search of the home, Investigator Gullett and other officers discovered approximately 0.5 ounces of marijuana, 13.14 grams of crack cocaine, and a large number of Oxycodone tablets found in pill bottles bearing names of persons unknown to the investigation, some of which had been filled in other states. Officers also discovered a money counter, electronic scales, several handguns, and a drug sales ledger.

In addition to the drug paraphernalia, officers discovered a Sun City bag containing $26,000; a grocery bag containing $21,000; and a purse containing approximately $12,000. Pertinent to this appeal, officers also discovered a wooden box in an upstairs hallway that contained a Michael Kors bag containing $93,740. All of the currency discovered by law enforcement was packaged in $1,000 or $5,000 bundles, held together by rubber bands that were placed in similar fashion on each bundle. Law enforcement subsequently arrested both Mr. Martin and Ms. Smith.

Based on evidence proffered during the hearing, the ALJ made several findings of fact concerning the incident, including that either Ms. Smith or I.S. summoned Ms. Tubbs to the residence. When Ms. Tubbs arrived at the home, officers were still executing the search warrant. Ms. Tubbs initially told officers that she owned the residence and that there was $150,000 in currency in the home belonging to her. She also explained to officers that in 2013 she had received a settlement for a work-related injury in the amount of $150,000. Ms. Tubbs then related to officers that she had transferred $50,000 of the settlement to Mr. Martin as a gift and had entrusted Mr. Martin with the $95,000 in the Michael Kors bag while she went on vacation to Mississippi. According to Ms. Tubbs's testimony, she habitually left her money with Mr. Martin or her sister when she travelled on vacation because she distrusted banks.

Ms. Tubbs filed a petition with the Tennessee Department of Safety and Homeland Security on June 15, 2017, requesting a hearing concerning all of the $153,652 seized and stating: "The majority of this amount seized belonged to me."[2] The ALJ scheduled the case for a trial on January 30, 2018. On December 22, 2017, Ms. Tubbs filed a "Motion to Suppress Evidence and to Return Unlawfully Seized Property," wherein she alleged that the search warrant procured to search her residence was insufficient because it was predicated on "two separate falsehoods." The State subsequently filed a response on January 22, 2018, wherein it defended the validity of the search warrant and asserted, *inter alia*, that Ms. Tubbs lacked standing to contest the

---

[2] Following the January 30, 2018 trial, the ALJ determined, as reflected in his findings of fact, that the exact amount of currency claimed by Ms. Tubbs was $93,740 because that was the amount seized from within the Michael Kors bag.

search.

Following the trial on January 30, 2018, both parties filed post-hearing briefs. On June 14, 2018, the ALJ issued a final order with the following "Summary of Determination":

> It is **DETERMINED** that [the State] showed, by a preponderance of the evidence, that the $153,652 was properly seized and is subject to forfeiture. The burden then shifted to [Ms. Tubbs] to show, by a preponderance of the evidence, that she has an ownership interest in the $93,740 she claims. [Ms. Tubbs] has failed to make this showing. Accordingly, the entire $153,652 is forfeited to the seizing agency.

In the order, the ALJ also delineated his respective findings of fact and conclusions of law and ordered the dismissal of Ms. Tubbs's claim.

On August 13, 2018, Ms. Tubbs filed a petition for judicial review with the trial court, wherein she requested, *inter alia*, that the trial court reverse the ALJ's judgment and "order the return of the $95,000 stored in the Michael Kors bag." Following a hearing conducted on February 22, 2019, the trial court affirmed the ALJ's decision on March 7, 2019. In its order, the trial court determined that the ALJ "made the correct findings of facts and properly applied the facts to the law in determining the property was subject to forfeiture."

Ms. Tubbs timely filed her notice of appeal to this Court along with a purported statement of the evidence. Following the State's objection, the trial court denied the statement of the evidence because a stenographic report of the proceedings was available pursuant to Tennessee Rule of Appellate Procedure 24(b). According to the trial court's directive, the respective transcript is included in the record on appeal.

## II. Issues Presented

Ms. Tubbs has presented three issues on appeal, which we have restated and reordered:

1. Whether the trial court applied the appropriate standard of review.

2. Whether, under the proper standard of review, the trial court erred by finding that the currency in question did not belong to Ms. Tubbs.

3. Whether, under the proper standard of review, the trial court erred by declining to find that the ALJ improperly denied the motion to suppress.

- 4 -

The State presents three additional issues on appeal, which we have restated, reordered, and consolidated as two issues as follows:

4. Whether the trial court erred by finding that the ALJ had correctly determined that Ms. Tubbs lacked standing based on her failure to demonstrate an ownership interest in the seized property.

5. Whether the trial court erred by affirming the ALJ's determination that the search warrant was valid.

### III. Standard of Review

Concerning the standard applicable to review of administrative forfeiture decisions, such as the instant cause, this Court has explained:

> Prior to 1994, the courts reviewed administrative forfeiture decisions using the Uniform Administrative Procedures Act's now familiar standard of review found in Tenn. Code Ann. § 4-5-322(h) (Supp. 2004). This standard required reviewing courts to ascertain whether an agency's decision is supported by substantial and material evidence. Tenn. Code Ann. § 4-5-322(h)(5). When the Tennessee General Assembly rewrote the procedures governing the forfeiture of personal property in 1994, it replaced the "substantial and material evidence" standard with the "preponderance of the evidence" standard. Tenn. Code Ann. § 40-33-213(a) (2003). Except for this change, the remaining provisions of Tenn. Code Ann. § 4-5-322(h) continue to govern the judicial review of forfeiture proceedings. Tenn. Code Ann. § 40-33-213(b).
>
> One of the chief purposes of the Uniform Administrative Procedures Act was to provide a single method for obtaining judicial review of the decisions of state agencies. Accordingly, with several exceptions not applicable here, petitions for review have, for over thirty years now, replaced petitions for a common-law writ of certiorari as the procedural device for obtaining judicial review. Thus, in forfeiture proceedings, the standard of review in Tenn. Code Ann. § 4-5-322(h), as modified by Tenn. Code Ann. § 40-33-213(a), has supplanted the standard of review in Tenn. Code Ann. § 27-8-101. . . .
>
> * * *
>
> The "preponderance of evidence" standard now applies to all seizures occurring after the effective date of the amendment.

- 5 -

*McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 819-20 (Tenn. Ct. App. 2005) (footnotes omitted).

Thus, aside from replacing the substantial and material evidence standard with the preponderance of the evidence standard in subsection (5)(A), Tennessee Code Annotated § 4-5-322(h) (Supp. 2019) governs judicial review of forfeiture proceedings, providing:

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)  In violation of constitutional or statutory provisions;

(2)  In excess of the statutory authority of the agency;

(3)  Made upon unlawful procedure;

(4)  Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Supported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

As the *McEwen* Court explained with regard to the requirements of Tennessee Code Annotated § 4-5-322:

Tenn. Code Ann. § 4-5-322 requires courts to engage in a three-step analysis when they review a final administrative order. The court must first determine whether the agency has identified the appropriate legal principles applicable to the case. Then, the court must examine the agency's factual findings to determine whether they are supported by substantial and material evidence. Finally, the reviewing court must examine how the agency applied the law to the facts. This step is, of course, a highly judgmental process involving mixed questions of law and fact, and great deference must be accorded to the agency.[fn] At this stage, the court must

- 6 -

determine whether a reasoning mind could reasonably have reached the conclusion reached by the agency, consistent with a proper application of the controlling legal principles. *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.,* 149 Md. App. 666, 818 A.2d 259, 275 (2003).

Courts reviewing administrative forfeiture orders use essentially the same three-step analysis. However, instead of reviewing the agency's findings of fact using the substantial and material evidence standard in Tenn. Code Ann. § 4-5-322(h)(5), the courts must review the sufficiency of the State's evidence using the preponderance of the evidence standard required by [Tenn. Code Ann. §] 40-33-213(a).

[fn] *See Bobbitt v. Shell,* 115 S.W.3d 506, 512 (Tenn. Ct. App. 2003) (courts must defer to an agency's decision when there is a sound basis for it); *Martin v. Sizemore,* 78 S.W.3d at 268 (courts customarily defer to adjudicatory determinations made by agencies acting within their area of specialized knowledge, experience, and expertise).

*McEwen*, 173 S.W.3d at 820-21 (2005) (additional footnotes omitted). Effective at the time of the filing of Ms. Tubbs's petition for judicial review, Tennessee Code Annotated § 40-33-213(a) (2018) provided:

The party aggrieved by the decision of the applicable agency may seek judicial review of the decision by filing of a written notice of review. The reviewing court shall use the preponderance of evidence standard in determining whether to sustain or reverse the final order of the applicable agency. The burden of proof on review shall be the same as in the proceedings before the applicable agency.

Judicial review is conducted without a jury and is limited to the administrative record, except to the extent that Tennessee Code Annotated §§ 4-5-322(e) and -322(g) permit the introduction of additional evidence." *Helms v. Tenn. Dep't. of Safety,* 987 S.W.2d 545, 547 (Tenn. 1999).

IV. Preponderance of the Evidence Standard of Review

As a threshold matter, we first consider Ms. Tubbs's issue of whether the trial court erred by applying an improper standard of review for this case. The parties are in accord that the proper standard of review of the final agency decision in this cause should have been the preponderance of the evidence standard set forth in Tennessee Code Annotated § 40-33-213(a). We agree.

The trial court ostensibly assessed the sufficiency of the State's evidence by

employing the substantial and material evidence standard found in Tennessee Code Annotated § 4-5-322(h)(5).[3] Furthermore, in rendering its ruling during the February 22, 2019 hearing, and reflected in its March 7, 2019 order, the trial court expressly relied on *Nixon v. City of Murfreesboro*, No. M2009-01347-COA-R3-CV, 2010 WL 2730565 (Tenn. Ct. App. July 9, 2010). In *Nixon*, a city employee sued to challenge her dismissal for violating the city's drug and alcohol policy. *Id*. at *1. The employee sought judicial review of the city disciplinary review board's decision to terminate her employment, and the trial court affirmed the board's decision based on the existence of substantial and material evidence pursuant to Tennessee Code Annotated § 4-5-322. *Id*. at *7. On appeal, the employee argued that she was entitled to *de novo* review by the trial court and that the board's decision was not supported by substantial and material evidence. *Id*. This Court determined that the trial court had applied the correct standard of review, pursuant to Tennessee Code Annotated § 4-5-322, and had properly denied *de novo* review as to the agency's factual findings. *Id*. at *9. Accordingly, this Court affirmed the trial court's decision upon concluding that substantial and material evidence had supported the board's decision. *Id*. at *17.

Unlike *Nixon*, the case at bar is an administrative forfeiture case, thus triggering the requisite use of the preponderance of the evidence standard applicable to judicial review in forfeiture proceedings under Tennessee Code Annotated § 40-33-213(a). *See Fisher v. Tenn. Dep't of Safety & Homeland Sec.*, No. M2018-02041-COA-R3-CV, 2020 WL 1932487, at *2 n.3 (Tenn. Ct. App. Apr. 21, 2020) (citing *McEwen*, 173 S.W.3d at 824-25). In *McEwen*, the appellant sought judicial review of the Tennessee Department of Safety's forfeiture order, which had directed forfeiture of several items of property that were seized incident to a criminal investigation of controlled substances. *Id.* at 817. Incorporating the substantial and material evidence standard of review, the trial court had affirmed the forfeiture order. *Id*. at 819. On appeal, this Court acknowledged that preponderance of the evidence, not substantial and material evidence, was the proper standard of review in the case. *Id*. at 821. Notwithstanding the trial court's error, this Court stated: "We will not compound the error on appeal, and accordingly, we will employ the 'preponderance of evidence' standard as required by Tennessee Code Annotated § 40-33-213(a)." *Id*. (footnote omitted). Although the trial court's use of the substantial and material evidence standard of review was rejected, this Court employed the preponderance of the evidence standard of review on appeal under Tennessee Code Annotated § 40-33-213(a) and affirmed the trial court's decision after determining that the evidence preponderated in favor of the forfeiture order. *Id*. at 828.

Ms. Tubbs asserts that the trial court's failure to apply the proper standard of review in this case necessitates reversal of the trial court's ruling. Although we agree that

---

[3] Although not clear from the trial court's March 7, 2019 order, we note that, as reflected by the transcript of the trial court's ruling at the February 22, 2019 hearing, the trial court employed the substantial and material evidence standard when affirming the ALJ's findings.

preponderance of the evidence, not substantial and material evidence, is the proper standard of review, we conclude that the trial court's use of the incorrect standard does not mandate reversal. *See id.* at 821. We will therefore employ the preponderance of evidence standard of review on appeal as required by Tennessee Code Annotated § 40-33-213(a). Our analysis and review will thus focus on determining whether the evidence preponderates in favor of the ALJ's forfeiture determination.

V. Ms. Tubbs's Standing to Challenge Forfeiture

Having determined this issue to be dispositive, we next address the State's issue concerning Ms. Tubbs's standing to challenge the forfeiture. At the outset, we must review civil forfeiture proceedings in general. As this Court has recently explained concerning the procedures related to property seized under the provisions of Tennessee Code Annotated § 53-11-451:

> Pursuant to Tennessee Code Annotated section 53-11-451(a), certain property is subject to forfeiture, including controlled substances, vehicles used or intended for use to transport or facilitating the transportation of controlled substances, and all "moneys . . . used, or intended to be used, to facilitate any violation of the Tennessee Drug Control Act . . . ." Tenn. Code Ann. § 53-11-451(a). Property seized under section 53-11-451(a) is subject to the forfeiture scheme outlined in Tennessee Code Annotated section 40-33-201, *et seq.* ("All personal property, including conveyances, subject to forfeiture under . . . § 53-11-451 . . . shall be seized and forfeited in accordance with the procedure set out in this part."). The Tennessee Supreme Court has described the procedure applicable in this situation "as following 'an administrative model for the forfeiture of property.'" *State v. Sprunger*, 458 S.W.3d 482, 495 (Tenn. 2015) (quoting *Helms v. Tennessee Dep't of Safety*, 987 S.W.2d 545, 547 (Tenn. 1999)).

*Augustin v. Bradley Cty. Sheriff's Office*, No. E2018-00281-COA-R3-CV, 2019 WL 4862240, at *6 (Tenn. Ct. App. Oct. 2, 2019).

This Court has recently elucidated the nature, scope, and constitutional parameters of civil forfeiture proceedings as follows:

> The Tennessee Supreme Court has defined forfeiture as "'[t]he divestiture of property without compensation.'" *State v. Sprunger*, 458 S.W.3d 482, 492 (Tenn. 2015) (quoting Black's Law Dictionary 722 (9th ed. 2009)). In the present case, as in *Sprunger*, "the divestiture occurs because of a crime and title to the forfeited property is transferred to the government." *Id.* (citing Black's Law Dictionary 722 (9th ed. 2009)). Despite often being based on the same underlying facts as criminal

- 9 -

prosecutions, forfeiture actions remain civil proceedings. *Id.* As a result, the Department only needs to prove "'by a preponderance of the evidence that the property is subject to forfeiture.'" *Id.* at 493 (quoting *Stuart v. State Dep't of Safety*, 963 S.W.2d 28, 34 (Tenn. 1998)).

Taking a person's property without compensation constitutes "an extraordinary exercise of the State's police power." *Id.*; *see also Redd v. Tenn. Dep't of Safety*, 895 S.W.2d 332, 335 (Tenn. 1995). Thus, although Tennessee law permits civil forfeitures, they are not favored and statutes authorizing them "'are to be strictly construed.'" *Sprunger*, 458 S.W.3d at 494 (quoting *Watson v. Tenn. Dep't of Safety*, 361 S.W.3d 549, 555 (Tenn. Ct. App. 2011)). "[S]trict compliance with our state's forfeiture statutes is not excused simply because the failure involves only 'technical violations' of the applicable statutes or the fact that the property owner is not prejudiced by the failure." *Ally Fin.* [*v. Tenn. Dep't of Safety & Homeland Sec.*], 530 S.W.3d [659,] 664 [(Tenn. Ct. App. 2017)] (citing *Sprunger*, 458 S.W.3d at 499). In addition to strictly complying with applicable statutes, forfeiture proceedings must also strictly comply with constitutional due process protections because the harsh nature of the proceedings implicates the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 8 of the Tennessee Constitution. *See Sprunger*, 458 S.W.3d at 493-94 (citing *Wells v. McCanless*, 198 S.W.2d 641, 642-43 (Tenn. 1947), and *Redd*, 895 S.W.2d at 334-35; *see also Ally Fin.*, 530 S.W.3d at 664. The Department bears the burden of satisfying due process requirements. *Sprunger*, 458 S.W.3d at 499.

*Nicholas v. Tenn. Dep't of Safety & Homeland Sec.*, No. M2017-01674-COA-R3-CV, 2018 WL 3831518, at *2-3 (Tenn. Ct. App. Aug. 13, 2018).

In order to challenge a forfeiture proceeding, a party must have sufficient standing, *see Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006), demonstrated by an ownership interest in the property that is subject to forfeiture. *See* Tenn. Code Ann. § 53-11-201(f)(1) (2008); *see also Urquhart v. State, Dep't. of Safety*, No. M2006-02240-COA-R3-CV, 2008 WL 2019458, at *5 (Tenn. Ct. App. May 9, 2008). Tennessee Code Annotated § 53-11-201(f)(1) governs the requirement for standing in cases where property is seized under the Drug Control Act, such as the case at bar. This subsection states:

(f)(1) Whenever, in any proceeding under this section, a claim is filed for any property seized, as provided in this section, by an owner or other person asserting the interest of the owner, the commissioner shall not allow the claim unless and until the claimant proves that the claimant:

- 10 -

(A) Has an interest in the property, which the claimant acquired in good faith; and

(B) Had at no time any knowledge or reason to believe that it was being or would be used in violation of the laws of the United States or of the state relating to narcotic drugs or marijuana.

Tenn. Code Ann. § 53-11-201(f)(1). Contrary to Ms. Tubbs's argument that she has standing to contest the forfeiture of the currency by virtue of her ownership interest in the searched residence, we emphasize that in order to contest the forfeiture proceeding, Ms. Tubbs was required to prove, among other things, that she has an ownership interest in the seized property, i.e., the seized currency in this action. *See* Tenn. Code Ann. § 53-11-201(f)(1)(A).

The State contends that Ms. Tubbs is required to carry the initial burden to establish standing, demonstrated by an ownership interest in the seized property. *See* Tenn. Code Ann. § 53-11-201(f)(1). However, as the State correctly notes, the ALJ did not determine whether Ms. Tubbs had carried her burden to establish standing, demonstrated by an ownership interest, until after the ALJ determined that the State had carried its burden of showing that the seized currency was subject to forfeiture. Tennessee Code Annotated § 40-33-210 (2018) provides in relevant part:

(a) In order to forfeit any property or any person's interest in the property pursuant to §§ 39-14-307, 47-25-1105, 53-11-451, 55-10-414, 55-16-104, 55-50-504(g), 57-3-411, 57-5-409, 57-9-201, 67-4-1020 or 70-6-202, the state shall have the burden to prove by a preponderance of evidence that:

(1) The seized property was of a nature making its possession illegal or was used in a manner making it subject to forfeiture under the sections set out in this subsection (a); and

(2) The owner or co-owner of the property knew that the property was of a nature making its possession illegal or was being used in a manner making it subject to forfeiture, or, in the case of a secured party, that the standards set out in subsection (f) are met.

(b) Failure to carry the burden of proof shall operate as a bar to any forfeiture and the property shall be immediately returned to the claimant.

- 11 -

(Emphasis added.) Based in part on his reliance on these statutory provisions, the ALJ required the State to carry the initial burden of proof under Tennessee Code Annotated § 40-33-210.

Although the State does not disagree with the ALJ's ultimate factual findings and conclusions of law regarding forfeiture of the seized property, the State takes issue with the ALJ's determination that the State, not Ms. Tubbs, carried the initial burden of proof in this case. Stated differently, the State posits that Ms. Tubbs was required to establish her burden of proof concerning standing, demonstrated by an ownership interest under Tennessee Code Annotated § 53-11-201(f)(1), before the State was required to prove its burden under Tennessee Code Annotated § 40-33-210.

Concerning this issue, the ALJ found in his final order that "[o]nce the [State] has made [an] initial showing that the seized property was legally seized, the burden shift[s] to those claiming an interest in the property to prove their ownership interest" under Tennessee Code Annotated § 53-11-201(f)(1). In further support of his determination that the State must bear the initial burden in this case, the ALJ quoted our Supreme Court's decision in *State v. Sprunger*, 458 S.W.3d 482, 499-500 (Tenn. 2015), which instructs:

> In forfeiture proceedings, the governmental authority seeking forfeiture must present affirmative proof that it has complied with both the procedural and the substantive requirements in the forfeiture statutes enacted by our Legislature. Consistent with the civil nature of forfeiture proceedings, the State's burden of proof as to both the procedural and substantive statutory requirements is by a preponderance of the evidence.

In *Sprunger*, the State sought forfeiture of the appellant's home after he was convicted of possessing child pornography stored on his home computer in violation of Tennessee Code Annotated § 39-17-1004 (2018).[4] *Id.* at 484-85. The forfeiture warrant solely addressed the appellant's real property; it did not seek the forfeiture of any personal property within the residence. *Id.* at 485. No dispute existed concerning the appellant's ownership interest in the property at issue because he had secured a mortgage on the residence, owned personal effects within the residence, and had sustained the attachment of a perfected statutory lien regarding the residence in connection with his criminal violation. *Id.* at 487. Notably, the State bypassed the administrative proceedings and instead commenced the forfeiture proceedings by filing a complaint in chancery court. *Id.* at 498.

---

[4] The forfeiture warrant was sought pursuant to Tennessee Code Annotated § 39-17-1008 (2018), which provides in pertinent part, "Any conveyance or real or personal property used in the commission of an offense under this part is subject to forfeiture under title 40, chapter 33, part 2."

- 12 -

Following a trial regarding the forfeiture complaint, the chancery court in *Sprunger* ordered forfeiture of the sale proceeds of the *pro se* appellant's real property. *Id*. at 490. On appeal, the appellant argued, *inter alia*, that the forfeiture warrant was insufficient, but this Court affirmed the chancery court's judgment. *Id*. at 490-91. The Tennessee Supreme Court granted *certiorari* and vacated the forfeiture, holding that the State had not complied with the procedural requirements in the applicable forfeiture statutes. *Id*. at 500. Specifically, the Supreme Court noted that the affidavit supporting the forfeiture warrant, the record of any *ex parte* hearing on the application for the warrant, and the instructions to the property owner directing how to contest the forfeiture, all of which were statutorily required, were either absent or never existed. *Id*. at 499-500. Consequently, our High Court vacated the forfeiture of the proceeds from the sale of the appellant's real property. *Id*. at 500.

We find *Sprunger* to be distinguishable from the forfeiture case at bar. In *Sprunger*, because the appellant's ownership interest in the real property was never disputed, the requirement of standing was not at issue. By contrast, in the case at bar, a dispute exists as to who maintained an ownership interest in the seized currency because it was located in a residence shared by at least two individuals and packaged in the same manner as other currency found within the residence. Furthermore, the *Sprunger* Court noted that Tennessee Code Annotated § 53-11-201, the standing statute applicable here, was not applicable to that case because "it sets forth the forfeiture and confiscation procedures pertaining to drugs and narcotics." *Id*. at 488 n.14. Also significant is the fact that in *Sprunger*, police sought forfeiture of the property under Tennessee Code Annotated § 39-17-1008 based on the appellant's criminal violation for knowingly possessing child pornography, *id*. at 485, whereas here Ms. Tubbs was never charged with any crime, and law enforcement sought forfeiture of the personal property pursuant to Tennessee Code Annotated § 53-11-451(a)(6)(A), as proceeds from illegal drug activities.

We determine this Court's decision in *Urquhart*, 2008 WL 2019458, to be instructive in our analysis of the case at bar. In *Urquhart*, the claimant contracted with a storage facility to clean out abandoned storage units in exchange for permission to retain the contents he discovered. *Id*. at *1. In one of the storage units, the claimant found $40,000 in United States currency. *Id*. He delivered the funds to an attorney, who deposited them into an interest-bearing account and reported the find to law enforcement. *Id*. During the investigation, it was determined that the claimant had emptied the wrong storage unit based on an error made by the storage facility. *Id*. The investigation further revealed that the currency was traceable to illegal drug transactions, and the police consequently seized the money, seeking forfeiture of it pursuant to Tennessee Code Annotated § 53-11-451(a). *Id*. at *2.

The *Urquhart* claimant filed an administrative claim for the return of the $40,000, contending that he had a legitimate ownership interest in the currency. *Id*. at *1. The

- 13 -

administrative law judge ruled that the currency was properly seized and forfeited it to the State. *Id.* On appeal, the chancery court held in favor of the State, agreeing with the administrative law judge that the claimant had not demonstrated an ownership interest in the currency. *Id.* at *3. This Court subsequently affirmed the chancery court's ruling after determining as a threshold issue that the claimant lacked standing to challenge the forfeiture proceeding based on the claimant's failure to demonstrate an ownership interest in the currency under Tennessee Code Annotated § 53-11-201(f)(1). *Id.* at *8. This Court further declined to address any additional issues raised by the claimant, including the issue of whether the currency did in fact constitute proceeds of illegal drug sales, stating, "the Claimant lacks standing to contest the forfeiture, so we need not decide whether the evidence was sufficient to sustain the trial court's conclusion as to the origin of the disputed money." *Id.* Accordingly, the *Urquhart* Court determined the other issues on appeal to be pretermitted. *Id.*

Although our research reveals that precedent concerning the interplay between a forfeiture claimant's burden to prove that she has standing under Tennessee Code Annotated § 53-11-201(f)(1)(A) and the State's burden to demonstrate that the seized property was subject to forfeiture pursuant to Tennessee Code Annotated § 40-33-210 is scant, we conclude that under these facts, this Court's analysis in *Urquhart* and well-established principles of standing require a claimant's standing to be a threshold determination. *See Darnell*, 195 S.W.3d at 619 ("[T]he doctrine of standing precludes courts from adjudicating 'an action at the instance of one whose rights have not been invaded or infringed.'") (quoting *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001)); *see also Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 333 (2006) (explaining that standing enforces the constitutional case-or-controversy requirement that is "crucial in maintaining the 'tripartite allocation of power' set forth in the Constitution.").[5] Inasmuch as the doctrine of standing restricts "[t]he exercise of judicial power" "to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate," *Darnell*, 195 S.W.3d at 620 (quoting *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)), we determine that the initial burden rests with the forfeiture claimant to demonstrate that she has standing to contest the forfeiture at issue. Because standing in this case must be

---

[5] Concerning forfeiture proceedings and standing, our research also revealed a federal decision, *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491 (6th Cir. 1998), wherein the Sixth Circuit Court of Appeals determined as a threshold issue whether the claimant maintained standing to challenge the forfeiture proceedings, demonstrated by an ownership interest in the seized property, before the court analyzed other issues related to the forfeiture. *Id.* at 497. Although we acknowledge that this case provides only persuasive authority regarding the instant action, we find it instructive inasmuch as it demonstrates the principle that, in forfeiture actions, the issue of standing is a threshold issue, to be adjudicated before any other issue raised on appeal. *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 430 (Tenn. 2011) (noting that "federal judicial decisions 'interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule.'") (quoting *Harris v. Chern*, 33 S.W.3d 741, 745 n.2 (Tenn. 2000)).

established by the claimant demonstrating an ownership interest in the seized property, *see Urquhart*, 2008 WL 2019458 at \*5, Ms. Tubbs was required to carry the initial burden to demonstrate that she maintained an ownership interest in the seized currency. Without such an ownership interest, she lacked standing to challenge the forfeiture. *See id* (citing *United States. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)).

In his ruling and in his "Final Order," the ALJ concluded that Ms. Tubbs lacked standing because she failed to show that she had any ownership interest in the seized currency. The trial court subsequently affirmed this finding by the ALJ. Upon careful review, we conclude that the evidence preponderates in favor of the trial court's affirmance of this determination.

Ms. Tubbs argues that the trial court erred in affirming the ALJ in part because the ALJ should have accredited her testimony, as well as the testimonies of I.S. and Mr. Martin, regarding her ownership interest in the Michael Kors bag containing approximately $95,000.00 of the seized currency. Specifically, Ms. Tubbs asserts that three eyewitnesses, including herself, had verified that the Michael Kors bag containing the currency in question belonged to her. She further maintains that while law enforcement was executing the search warrant, she told at least one officer about the Michael Kors bag and its contents. She thereby contends that this proves that she did not fabricate a claim after the fact.

Ms. Tubbs testified that she habitually left her money with her son or her sister when she was out of town; that she had left town on the occasion in question for vacation in Tunica, Mississippi; and that she provided corroborating proof that she had left town for Tunica. Ms. Tubbs explained that she typically left her money with others while she was away by reason of her general distrust of banking institutions, compounded with the fear that her money would be stolen from her residence while she was absent. Additionally, Ms. Tubbs argues that the State's proof was devoid of any witnesses to contradict her testimony regarding her alleged ownership of the Michael Kors bag and the approximately $95,000 it contained.

In determining that Ms. Tubbs failed to establish that she had an ownership interest in the approximately $95,000 she claimed was hers, the ALJ made the following findings of fact:

> Officers also found a Sun City bag with $26,000. They discovered a grocery bag with $21,000. They found a little over $12,000 in a purse [Ms.] Smith claimed as hers. They found a wooden box in an upstairs hallway that contained a Michael Kors bag with $93,740. Martin had $600 on his person. Law enforcement seized all the currency as proceeds from drug trafficking.

- 15 -

The currency from all four locations was packaged in either $1,000 or $5,000 bundles. Rubber bands held these bundles together. Photos show all the money was bundled and rubber bands placed exactly in the same [manner] on all the bundles. In other words, a bundle from the Michael Kors bag was indistinguishable from a bundle from one of the other locations.

* * *

Either [Ms.] Smith or [I.S.] summoned Tubbs to the house during the search. Tubbs initially told officers that there was $150,000 in the home that belonged to her. She first said $50,000 then said there was an additional $100,000 for a total of $150,000.

Tubbs and Martin both filed claims indicating that they each owned all the money and wanted it all returned. Smith filed a claim as well, but the record does not indicate the amount of her claim. Neither Tubbs nor Martin knew how much money was in the house in total. Neither knew the amount in the Michael Kors bag.

Tubbs' testimony was not credible. This determination is based upon: 1) Tubbs' supposed decision to leave money at a home that was recently the subject of a home invasion robbery, 2) her unawareness of the amount of money in the bag, 3) inconsistencies between her testimony and other witnesses' testimonies concerning when she went to Tunica; 4) her supposed distrust of financial institutions, yet she has several accounts with them; 5) her initial claim for all the seized currency; 6) her explanation of her finances concerning her cash purchase of the relocated home and land, and 7) her explanation of her finances in general.

The [State] has shown, by a preponderance of the evidence, that the $153,652 of seized currency was proceeds of drug trafficking and properly seized by law enforcement.

(Paragraph numbering omitted.)

Regarding the ALJ's determination that Ms. Tubbs's testimony was not credible, the trial court was required, as we must in turn, to defer to the ALJ's credibility determination "because of [the ALJ's] opportunity to observe the demeanor of the witnesses." *McEwen*, 173 S.W.3d at 823 (citing *Dep't of Health & Mental Hygiene v. Shrieves*, 641 A.2d 899, 906 (Md. Ct. Spec. App. 1994)). As this Court has previously stated, "[s]o long as there is a sound basis in the record to support the agency's decision,

this court must defer to that decision." *See Bobbitt v. Shell*, 115 S.W.3d 506, 512 (Tenn. Ct. App. 2003); *see also Martin v. Sizemore*, 78 S.W.3d 249, 269 (Tenn. Ct. App. 2001) ("Courts customarily defer to adjudicatory determinations made by administrative agencies acting within their area of specialized knowledge."). Our careful review of the record and the ALJ's final order indicates that the trial court properly concluded that the ALJ did not exceed his authority when determining that Ms. Tubbs's testimony was not credible. *See* Tenn. Code Ann. § 4-5-322(h).

Having determined that Ms. Tubbs's testimony concerning her ownership of the seized currency was not credible, the ALJ further concluded that Ms. Tubbs had failed to demonstrate an ownership interest in the seized currency under Tennessee Code Annotated § 53-11-201(f)(1). As noted previously, absent such an ownership interest, a party lacks necessary standing to challenge the forfeiture. *See Urquhart*, 2008 WL 2019458, at *5. Concerning our review of the issue of standing, this Court has previously stated that the "issue of whether a party has standing is a question of law." *See Cox v. Shell Oil Co.,* 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005). Therefore, our review is "*de novo* upon the record with no presumption of correctness accompanying the trial court's conclusions of law." *See Massengale v. City of E. Ridge*, 399 S.W.3d 118, 123-24 (Tenn. Ct. App. 2012) (quoting *Cox,* 196 S.W.3d at 758). Upon our *de novo* review of the administrative record in this matter, we conclude that the trial court properly affirmed the ALJ's finding that Ms. Tubbs lacked standing to contest the forfeiture as demonstrated by her lack of ownership interest in the seized property pursuant to Tennessee Code Annotated § 53-11-201.

Ms. Tubbs avers that she left the Michael Kors bag containing approximately $93,740 with her son while she travelled on vacation. The administrative record indicates that Mr. Martin's residence had been burglarized in recent weeks. When questioned on direct examination during the January 30, 2018 trial why she would choose to leave a large sum of money at a residence that had recently been burglarized, Ms. Tubbs responded that it "did not bother" her that Mr. Martin's residence had been burglarized and that "you just can't let stuff scare you." Ms. Tubbs also acknowledged that she possessed a safe at her residence where she typically kept her money. According to Ms. Tubbs, she generally distrusted banks because of at least one prior bad situation she had experienced with a banking institution. Although we note Ms. Tubbs's testimony that she held a general distrust for financial institutions, she also testified that, at the time of the January 30, 2018 trial, she had two open and active bank accounts.

The administrative record also demonstrates numerous inconsistencies regarding how much currency Ms. Tubbs claimed as hers. During the January 2018 trial, Investigator Gullet testified that Ms. Tubbs had provided officers with at least three different amounts of money that she claimed belonged to her. In her subsequent petition requesting a hearing, she listed the amount of $153,652 with an annotation stating: "The majority of this amount seized belongs to me." Furthermore, during the trial, when Ms.

Tubbs was asked how much money she believed to be in the Michael Kors bag, she stated, "I was thinking between $95,000 and $97,000." When she was told that only $93,740 was found in the Michael Kors bag, she stated, "I just don't find that accurate. I don't."

In addition, Ms. Tubbs's testimony regarding the chronology of her vacation was inconsistent with the testimony of other witnesses. Specifically, Ms. Tubbs stated that she departed for vacation on the morning of May 5, 2017. However, Mr. Martin testified that Ms. Tubbs had returned from vacation on May 4, 2017, the date when the search warrant was executed at the residence. Mr. Martin further testified that Ms. Tubbs did not travel on vacation following the execution of the search warrant.

Furthermore, as the State noted, Ms. Tubbs's explanation of her expenditures, when compared to the amount of seized currency that she claimed was hers, is irreconcilable. According to Ms. Tubbs's testimony and exhibits presented at trial, in 2011 she obtained a workers' compensation settlement in the amount of $141,356. From the settlement, she gifted Mr. Martin $50,000. She further related that she paid anywhere from $30,000 to $40,000 in cash to relocate and install the mobile home so that Mr. Martin could reside there. Ms. Tubbs testified that she paid an additional unspecified amount furnishing the house with appliances, furniture, and décor.

Insofar as her monthly expenditures, Ms. Tubbs testified that her mortgage and utilities totaled approximately $800 per month, plus expenses for food. She further explained that she visited the casinos not infrequently, bringing with her "no more than $500 to $600" each visit. In addition to her travel expenses, Ms. Tubbs, over the years, had acquired several designer handbags, one of which she claimed she purchased for $400. She indicated that her monthly expenses often consumed all of her monthly income. Regarding her income, Ms. Tubbs also testified that it was limited to a monthly Social Security Disability Insurance check in the amount of $1,500 and rent payments ranging from $350 to $500 per month from Mr. Martin and Ms. Smith. Notwithstanding her expenditures and limited income, Ms. Tubbs claimed that she had saved $95,000.

Finally, the administrative record reflects that all of the seized currency within the residence was packaged and bundled in similar fashion. Photographs taken by law enforcement at the scene demonstrate that each bundle of currency was packaged in either $1,000 or $5,000 bundles. Ms. Tubbs failed to provide a sufficient explanation as to why the seized currency she claimed as hers was packaged and bundled in the same manner as the seized currency discovered elsewhere in the residence.

Based on our thorough review of the record, we conclude that the evidence preponderates in favor of the ALJ's determination that Ms. Tubbs failed to carry her burden of demonstrating an ownership interest in the seized currency under Tennessee Code Annotated § 53-11-201(f)(1). *See McEwen*, 173 S.W.3d at 828. Consequently, she

lacks standing to contest the forfeiture. The trial court properly affirmed the ALJ's conclusion that, for the above-stated reasons, Ms. Tubbs lacked requisite standing to contest the forfeiture of the property. *See Urquhart*, 2008 WL 2019458, at *5.

## VI. Remaining Issues

Ms. Tubbs also asserts that the trial court erred by affirming the ALJ's determination that the State had carried its burden to prove that the seized currency constituted proceeds from illegal drug activity pursuant to Tennessee Code Annotated § 40-33-210. Having determined that Ms. Tubbs lacked standing to contest the forfeiture of the seized currency, we further determine that any issue concerning whether the currency constituted proceeds from illegal drug activity is pretermitted as moot. *See Urquhart*, 2008 WL 2019458, at *8. Furthermore, because Ms. Tubbs does not have standing to contest the forfeiture, the remaining issues raised by the parties, which concern the validity of the search warrant and Ms. Tubbs's "Motion to Suppress," are also pretermitted.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court in determining that Ms. Tubbs lacked standing to challenge the forfeiture of the seized currency in question. We further determine that the trial court's application of the incorrect standard of review constituted harmless error because under the correct standard of review, the evidence preponderated in favor of the ALJ's determination that Ms. Tubbs failed to carry her burden of demonstrating an ownership interest in the seized currency. This case is remanded to the trial court for enforcement of the judgment and collection of costs set below. Costs on appeal are assessed to the appellant, Wanda Tubbs.

_____
THOMAS R. FRIERSON, II, JUDGE